## WARD et al. v. STRICKLAND et al.

### No. 13441.

Court of Civil Appeals of Texas. Dallas.
Nov. 12, 1943.

Rehearing Denied Jan. 7, 1944.

80

W. J. Durham, of Dallas, and Cofer & Cofer, of Austin, for appellants.

John Davis, of Dallas, for appellees.

BOND, Chief Justice.

Appellant E. E. Ward instituted this suit against B. J. Strickland, as legatee and

trustee under the will of H. Strickland, deceased, and Roy Strickland, also a legatee under the will, jointly and severally, to recover 93 shares of the capital stock of Excelsior Life Insurance Company, by virtue of the breach of an oral contract made and entered into by Ward and H. Strickland. Excelsior Life Insurance Company intervened pro forma. The contract is succinctly stated in the charge of the court and sustained by evidence and findings of the jury, to which defendants urged no objection in the court below and present no adverse criticism here. So we may well conclude in the light of the verdict that the contract, as related in the charge of the trial court, was in fact made by the contracting parties in terms therein stated. We adopt the findings of the jury, as follows: "That Ward and Strickland entered into an oral agreement just prior to the incorporation on March 4, 1937, of the Excelsior Life Insurance Company, whereby Ward agreed to execute two notes in the sum of $9,300 payable to Strickland, to be transferred by Strickland to the Corporation, for which the Corporation was to issue 93 shares of stock in the name of Strickland, and Strickland agreed to pay off $4,894.63, represented by two notes executed by Ward, one payable to the Buell Lumber Company and the other to the Excelsior Mutual Life Insurance Company, and by which Strickland further agreed that if he required Ward to pay the debt represented by the two last named notes, then said stock of 93 shares, issued by the Excelsior Life Insurance Company and in the name of Strickland, should be transferred to Ward."

The breach of this contract in March, 1942, by Strickland's demanding and requiring Ward to pay the two last mentioned notes in the contract, is the gist of this suit.

The evidence is uncontroverted: On February 15, 1937, Ward executed the first two notes mentioned in the contract, with deed of trust liens on his real estate; one in the sum of $4,200 and the other in the sum of $5,100, each payable to H. Strickland for 93 shares of the capital stock of the proposed life insurance company, at par value of $9,300. On March 4, 1937, Strickland transferred the said two notes and deed of trust liens to A. Presswood, corporator and trustee of the proposed company, which were accepted by the incorporators in payment of the 93 shares,

and approved by the Board of Insurance Commissioners at Austin, to evidence good faith of Strickland's subscription for the stock. On May 3, 1937, the charter of the corporation, with capital stock of $25,000 and $5,000 surplus, was duly granted, and thereafter, on August 5, 1937, the 93 stock certificates were issued to Strickland in accordance with his contract with Ward. The remaining shares were divided among all the incorporators—37 shares to Strickland and 41 shares to each of the other three incorporators, Ward, Presswood and Jones,—each giving notes with liens on real estate in payment therefor. In January, 1937, the last two notes—one of $2,000 due and payable to the Excelsior Mutual Life Insurance Company, and the other of $2,894.63 to Buell Lumber Company, were, by written assignments, transferred to Strickland, along with the deed of trust liens securing their payment. These assignments were forthwith recorded in the deed records of Dallas County, Texas. In February, 1942 Strickland made demand of Ward for payment and, in March following, placed the notes in the hands of his attorney for collection; thus, on March 4, 1942, required Ward to pay the indebtedness with five years' accumulated interest, less a loan of $1,500 that Ward had extended to Strickland in 1940.

On March 14, 1942, incident to the breach, Ward instituted this suit to recover the 93 shares of the Excelsior Life Insurance Company which had been devised to appellees by the will of H. Strickland. In due order of trial the judge of the court below denied plaintiff's motion for judgment and, notwithstanding the verdict of the jury and the uncontroverted breach of contract by H. Strickland, sustained defendant's motion non obstante veredicto and entered judgment accordingly. Plaintiff and intervener appealed, plaintiff assigning errors on the action of the court.

We think the contract was a valid obligation, susceptible of performance, and the breach thereof by Strickland warranted judgment for plaintiff for the 93 shares of stock. It will be seen that no defensive issues were submitted to the jury and none requested; hence all controverted issues of fact, if any, raised by pleading and supported by evidence, or which may be deduced from the evidence as the result of reasoning, were waived by defendants.

■ Having been established by the verdict of the jury, the contract, though oral, bears the same force and effect in law as if in writing, and the uncontroverted evidence of the breach deprived the trial court of power to make further findings of fact in support of the judgment. Hines v. Parks, 128 Tex. 289, 96 S.W.2d 970; Wichita Falls & O. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79. The verdict and uncontroverted breach by Strickland stand as final decision in favor of appellant upon the basic and essential facts. Therefore, we reach the conclusion that the burden is upon appellees to sustain the judgment of the trial court and to show some substantial legal ground why the verdict of the jury should not have been followed, or some legal reason which would vitiate a judgment had the trial court sustained plaintiff's motion. In the absence of such showing, it becomes the duty of this court to render such judgment as should have been rendered in the court below. Perry v. Citizens Life Ins. Co., Tex.Civ.App., 163 S.W.2d 743. This brings us to the consideration of appellees' points to sustain the trial court's action in entering the judgment in favor of appellees.

Appellees contend that the trial court did not err in overruling appellant's motion and sustaining their motion for judgment non obstante veredicto, (1) on his pleas of two and four-year statute of limitations; (2) plea of waiver and abandonment of the contract; (3) specific performance of the contract is a matter of grace; and (4) statute of fraud bars plaintiff's action. We do not think these defensive issues, in absence of findings by the jury, can, as a matter of law, sustain the contention.

■ On appellees' point of limitation, the evidence shows that the contract was breached by H. Strickland on March 4, 1942, when he required appellant Ward to pay the notes assigned to him in January, 1937. There is no evidence that Ward knew, or that by exercise of diligence he should have known, that Strickland was not going to release the two notes and liens. Strickland was the owner and holder of the notes, evidently assigned to him in trust for the faithful performance of the contract in suit. Because of the assignments of the notes and liens, it was within Strickland's province to cancel or release them in such manner and at such time as he might choose. These assignments and their recordation in the Deed Records of Dallas County in 1937, are not inconsistent with Strickland's contractual obligation to release the notes. The recordation merely implied constructive notice to Ward, arising in law, that Strickland was the owner of the notes, and was wholly consistent with his obligation to take up the indebtedness and release Ward from the payment thereof. There is no evidence that Ward had actual knowledge that Strickland was holding the notes from 1937 to 1942 as subsisting obligations and that he did not cancel them. There is no evidence that Strickland made demand upon Ward for payment of principal or interest, or that any effort was made to enforce collection. The interest on the Excelsior Mutual Life Insurance Company's note was payable semiannually, and on the Buell Lumber Company's note in monthly installments, with like installments on principal from date of execution. Ward paid neither interest nor installment, nor was he called upon to do so until demand was made upon him to pay the whole indebtedness. The notes further provide for accelerated maturity at option of the holder, in default of payment of interest or installment of principal when due. There is no evidence that Strickland exercised the privilege of acceleration, and it might well have been assumed by Ward that Strickland was carrying out his obligation and had canceled the notes; certainly it could not be assumed that Strickland had breached his contract and forfeited his rights to the 93 shares of stock by holding the notes and liens as subsisting obligations. We think limitation did not begin to run until demand was made by Strickland in 1942, requiring Ward to pay the notes.

■ On the point that appellant waived and abandoned the contract in suit by subscribing to a subsequent verbal agreement entered into by all the incorporators of the proposed life insurance company (afterward ratified and confirmed by the directors of the corporation), to the effect that the several notes and deed of trust liens given by the subscribers for their respective shares of stock in the corporation would be paid out of the earnings of the company and that no dividends would be paid to the holders until such time as the dividends had paid the notes, the evidence is substantially as stated. Ward and Strickland joined the other three incorporators in subscribing to the agreement. They, along with the other subscribers, executed their notes to the corporation in the amounts of

their subscriptions, and the notes were subsequently paid out of the earnings of the corporation. None of the incorporators had paid cash for his stock or received dividends while his note was outstanding. It will be seen that this subsequent agreement affected only the first two notes mentioned in the contract, and in no way relates to Strickland's obligation to pay off the $4,894.63 indebtedness due by Ward to Excelsior Mutual Life Insurance Company and Buell Lumber Company, under his agreement to do so. Strickland's obligation to pay off and discharge the $4,894.63 indebtedness assigned to him, or forfeit the 93 shares, was a separate stipulation of his agreement. He made the contract, hence it was not within the court's power to change or alter it, making conditions of waiver, abandonment or forfeitures not expressed therein, or within the contemplation of the parties. Neither the contract in suit nor the subsequent agreement makes provision for waiver or abandonment of the express obligation of the parties; therefore, courts will not do so. This contention, we think, is without merit.

On the point that specific performance of the contract is a matter of grace, appellees base the contention on rules of equity: First, because the uncontroverted record shows that the transaction between Ward and Strickland constitutes an exchange of credit. Second, because the contract of January, 1937, the attendant circumstances and subsequent events, required the trial court to deny specific performance. Third, because of such great change and increase in value of the 93 shares of stock from the date of contract to the date of breach, that to enforce the contract would be harsh and inequitable.

The trial of a suit in equity is governed for the most part by the same rules as in an action at law. Trial courts, on demand, are required to impanel a jury in case of equitable cognizance, and the province of the jury is to determine the issue. The trial court is enjoined by law to submit issues where such are raised by pleadings and evidence, or which may reasonably be deduced from the evidence by process of reasoning, and the verdict upon the issues is conclusive. So where, as in this case, the party raises equitable issues to avoid breach of a contractual obligation and resulting damage, or where the trier of facts, by means of reasoning, may determine the equities between the parties, the burden is upon the party to object to the charge of the court in failing to submit such issues, and tender special issues to entitle him to raise the points of error on appeal. Absent objections and tender of issues, the party aggrieved waived the points, thus depriving the trial judge of judicial discretion to find facts in reference thereto to sustain the judgment.

Appellees contend in effect that the evidence, being uncontroverted, raised the issue of equitable relief for determination by the trial judge, as a matter of law. In other words, the equities in favor of the judgment follow the law, hence the judge may take cognizance of uncontroverted facts, determine the rights of the parties, and grant the relief required to meet the ends of justice. We think it cannot be said that the trial judge had any such power to invade the province of the jury and enter judgment. The jury was the trier of facts in this case and, no issue having been submitted or requested, in equity, the prerogative of the judge was limited to granting a new trial—and not judgment non obstante veredicto—if the evidence was unsatisfactory.

As related above, appellant's suit is for breach of an express oral contract having the force of a written contract, in which the element of damage is specifically stated; that is, in event of breach by Strickland, the 93 shares of stock would belong to Ward. The terms of the contract, the breach thereof, and the element of damage cannot be questioned here. There is no issue of fraud, accident or mistake, or that the parties were not competent contractors and bound by the terms of their agreement. They knew at the time the contract was made that the subject matter (the 93 shares of stock of Excelsior Life Insurance Company) was not in existence; the corporation had not been chartered and the stock had not been issued. Of course, had the subject matter of the contract remained in such embryonic state without cause or fault of Strickland, certainly appellant would have no cause of action. And further, it might be said that had the parties known or reasonably anticipated that the corporation, by the frugality of its officers and directors, would attain earnings sufficient to pay off the notes given in payment of the shares of stock by several stockholders, including the notes of Ward to

Strickland ($9,300 for the 93 shares) at or before the due date thereof, then the question of adjustment of equities between the parties might have been an appropriate issue for the determination of the jury. Be it said to the credit of this corporation and its directing officials that its earnings not only paid the stockholders dividends in amount to liquidate their notes given for the $25,000 capital stock and $5,000 surplus, but in addition, created an undivided surplus of more than $30,000. Ward and Strickland shared pro rata in the earnings of the corporation. Be that as it may, the 93 shares involved in this suit were purchased by Strickland with Ward's notes, secured by liens on his real estate. Ward took the chance of Strickland's paying the corporation and releasing the indebtedness, or suffering the consequences of his failure to do so. Strickland obligated himself not only to pay the $9,300 notes and hold Ward harmless, but also to pay off Ward's $4,894.63 indebtedness and release him from payment thereof. He succeeded through earnings of the corporation in partly performing his obligation, but wholly failed in part, to Ward's damage.

In Bergstedt v. Bender, Tex.Com.App., 222 S.W. 547, judgment approved by Supreme Court, it is stated: "It is true that courts of equity will, in large measure judge a contract as of the time of its execution. If fair when made, its enforcement will not necessarily be denied because it has become harsh and inequitable through subsequent events and changed conditions. Courts will not enter into an investigation and determine the wisdom of a bargain made by persons competent to deal with their own affairs. Liberty of contract will not be unduly restricted. Mere hardship resulting from miscalculations or from contingencies which might have been foreseen, and for which plaintiff is not at fault, will not ordinarily prevent a specific enforcement. 25 R.C.L. 224. This principle finds application and illustration in the many cases where, through fluctuation in values, a contract, fair in its inception, becomes harsh and oppressive."

So in this case, there is no question but that the contract was fairly made. By it Ward took the risk of having to pay the $9,300 to the corporation, or suffer the loss of his real estate. Strickland acquired title and possession of the 93 shares of stock on account of the contract, and received the full benefit of Ward's obligations. The unforeseen events resulting in Ward's favor should not make against the enforcement of the contract voluntarily breached by Strickland. We do not think the principle of equity warranted the trial court's action in overruling appellant's motion for judgment and entering judgment in favor of appellees.

On the point that the statute of fraud (Art. 3995, Sec. 4, Vernon's Ann. Civ.St.) prevents the enforcement of a breach of contract and resulting damage, because the contract is oral and involves real estate, we think there is no merit in this contention. Appellees' real estate is not involved either in pleadings or evidence. The mere fact that Ward's notes given to Strickland were secured by deed of trust on Ward's real estate, and that a contingency might arise by which the Excelsior Life Insurance Company would acquire the real estate in default of payment of the notes, is not a contract for the sale of land inhibited by statute. The contingency did not arise and appellant's suit is not based upon default of payment of the $9,300 notes or enforcement of the deed of trust. The statute has no application to the contract in suit or the facts in issue, such as would bar plaintiff's action.

Under no view of the facts of this case have appellees interposed a meritorious defense to the trial court's action in overruling appellant's motion for judgment, and it becomes our duty to render such judgment as should have been rendered in the court below; accordingly, the judgment is reversed and here rendered in favor of appellant E. E. Ward, against appellees and intervener, for title and possession of the 93 shares of Excelsior Life Insurance Company stock.

Reversed and rendered.