**DAVIS BUMPER TO BUMPER, INC., and E. E. Davis, Appellants,**

v.

**AMERICAN PETROFINA COMPANY OF TEXAS, Appellee.**

No. 7723.

Court of Civil Appeals of Texas.

Amarillo.

June 26, 1967.

Rehearing Denied Sept. 5, 1967.

Herbert C. Martin, Amarillo, for appellants.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, H. A. Berry, Amarillo, of counsel, for appellee.

CHAPMAN, Justice.

Appellee, American Petrofina Company of Texas, hereinafter called Fina, sued Davis Bumper to Bumper, Inc. and E. E. Davis upon a verified, sworn account for petroleum products, for rent, for a string of pennants, rental upon a credit card imprinter and for recovery of attorney's fees. It also alleged that on several occasions, and particularly on October 10, 1963, it presented in writing such claim to Davis Bumper to Bumper, Inc. demanding payment, but at the time of filing suit, which was more than thirty days from such presentation, no part thereof had been paid or satisfied. As would be suggested by its name, Davis Bumper to Bumper, Inc. is a corporation engaged in various enterprises having to do with the supply of materials for motor vehicles, including that of wholesale dealer of motor fuels. The petroleum products constituting the dealings between the parties consisted of diesel fuel, premium and regular gasoline.

E. E. Davis was included as a party defendant because of a written guarantee he had made to Fina of payment of any indebtedness accumulating from Davis Bump-

er to Bumper to Fina to induce it to sell their products to Davis Bumper to Bumper, a family-owned corporation.

In reply to the verified, sworn account appellants, in their Third Amended Original Answer, Cross-Petition and Counter-Claim duly filed their sworn denial under Rule 185, Vernon's Ann.Texas Rules, to the effect that "Plaintiff's First Amended Original Petition, which is the foundation of Plaintiff's action * * * is wholly not just or true" except for " * * * the items as to diesel fuel, string pennants, imprinters and credits on such account." Their cross-action and counter claim asserted, inter alia, that by the contract between the parties the petroleum products were to meet specifications that would comply with those of the State and would be practicable and suitable for use as fuel in internal combustion engines; that such contract constituted an express warranty that all such petroleum products would be practicable and/or suitable for use as fuel in internal combustion engines; that the fuel did not comply with such written warranty, so appellee was not entitled to recover on the contract. They also alleged, in effect, that during the approximate thirty-day period involved in the deliveries sued upon appellee was advised of the defective products being delivered; that they then promised to deliver the type products contracted for; that they failed to do so, and by such failure caused their customers to cease buying their products to their damage of $52,786.69 actual damages. They also alleged that by its willful and studied delivery of inferior products and its " * * * willful and maliciously designed course to destroy defendants' business as a wholesale gasoline dealer," appellants were entitled to recover from Fina $50,000 exemplary damages.

The case was submitted to a jury upon various issues, which will be later considered as we deem necessary in disposing of the questions raised. Suffice it to say at this time that all parties filed motions for judgment. The jury having found that the premium gasoline delivered during the approximate thirty-day period involved was practicable and suitable for use in internal combustion engines, there is no controversy here concerning that portion of the suit upon the sworn account.

When appellants filed their Rule 185 sworn denial of the account sued upon, thereby invoking a rule of procedure with regard to evidence necessary to establish a prima facie right of recovery or defense,[1] such pleading destroyed the probative force of the verified, itemized account attached to Fina's petition. J. E. Earnest & Co. v. Word, 137 Tex. 16, 152 S.W.2d 325 (1941). This then placed the burden on Fina to prove its case as at common law. Opryshek v. McKesson & Robbins, Inc., 367 S. W.2d 357 (Tex.Civ.App.-Dallas, 1963, no writ).

In Special Issue No. 2(a) the jury found the regular gasoline delivered by Fina to appellants between the dates of January 7, 1963, and February 2, 1963, was not practicable and suitable for use in internal combustion engines, but it also found that through its president, E. E. Davis, it detected such fuel was not suitable and practicable for use in internal combustion engines; that Davis Bumper to Bumper accepted it so knowing, and sold it to its customers knowing the quality of the fuel being sold. By its first point of error appellants contend there is not any evidence to support the value of the regular gasoline in controversy because the jury found it was not practicable and suitable for use in internal combustion engines,[2] Fina having

---

1. Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75 (1958).

2. By supplemental petition in reply to "Defendant and Cross-Plaintiffs' Third Amended Original Answer, Cross Petition and Counterclaim" Fina pleaded the petroleum products sold to Davis Bumper to Bumper, Inc. met specifications that did comply with those provided by the State of Texas in Article 1105, Penal

expressly warranted the delivery of gasoline that was practicable and suitable for use in internal combustion engines.

Both by the wording of appellants' first point and their argument thereunder they appear to contend (1) that Fina failed in its fundamental requirement to prove the exhibit constituting its verified sworn account, and (2) that it failed to prove, have submitted and secure a finding of the value of the regular gasoline, which they contend could not be of the value contracted for because it did not meet the specifications of the contract.[3]

E. E. Davis, president of Davis Bumper to Bumper, Inc. testified that the prices set out in appellee's pleadings and the various invoices were the prices his company was supposed to pay for the gasoline, if it were of the proper quality; that they were the prices he had been paying, and that except for the fact he claimed that the gasoline his company received was bad, the items would all be owing to Fina. Documentary evidence introduced substantiates such admissions.

Fina then placed into evidence deposition testimony of C. A. Rankin, who for twenty-four years had been Branch Laboratory Testing Manager of Ethyl Corporation in its San Bernardino, California, and Tulsa, Oklahoma, laboratories. He testified he made tests of Fina's regular gasoline from a gallon sent from their Wichita Falls plant[4] received on January 17, 1963; that he followed procedures used by the entire oil industry and accepted by " * * * each and every category of the oil industry;" that such tests comply with the method of testing published by the Bureau of Mines Technical Paper 323–B and the method of testing approved by the American Society for Testing Materials (A.S.T.M.); that the quality was as good or better than average gasoline for this marketing area; was of excellent commercial quality; reflected no defect or deficiency in quality; and each sample was better quality than required by the minimum standards of the State of Texas and should operate satisfactorily in automobile engines.

We hold that by E. E. Davis's admissions, the testimony last related, and the stipulations in the record, Fina discharged the burden at least of making out a prima facie case, which has been held sufficient until an affirmative defense is shown. Burrus Mills, Inc. v. Hein, 399 S.W.2d 950 (Tex.Civ.App.-Houston, 1966, writ ref'd, n.r.e.).

Code, Section (b) of which provides: "Motor fuel or gasoline shall be volatile hydro-carbon fuel, free from water and suspended matter, and shall be practicable and/or suitable for use as fuel in internal combustion engines."

3. The Distributor Sales Contract between Fina and Davis Bumper to Bumper pleaded in its First Amended Original Petion as Exhibit A and introduced in the trial of the case as P–2 in the exhibits provides, inter alia, as follows:
"No. 5. PRODUCT SPECIFICATIONS. The petroleum products sold under this agreement will meet specifications that will comply with those of the State in which the designation of each shipment is located. The methods of testing shall be those published by the Bureau of Mines in Technical Paper 323–B, and by the American Society for Testing Materials in effect on this date.

*       *       *       *       *
"No 9. CLAIMS. FINA shall not be liable for any claim or claims *on account of* shortage or *quality* unless before unloading the shipment the Buyer notified FINA by telegraph. FINA agrees upon receipt of such telegraphic advice to promptly advise the Buyer the authority for procedure in each case, but in any event FINA at all times has the option to divert or withdraw from the Buyer any shipment upon which claims is made." (Emphasis added).

4. The Invoices and Manifests of Fina in the record show the gasoline purchased by Davis Bumper to Bumper from it for the period in controversy came from their Wichita Falls plant except on January 17, 1963, Invoice No. 13359, which came from their Sherrin plant, which the jury found met specifications.

Unquestionably, appellants' cross-action and counter claim to the effect that the gasoline was not of the quality required by their contract with Fina constituted their affirmative defense of avoidance. "Issues relating to defenses by way of rebuttal or by way of avoidance are regarded as affirmative issues * * *" Salley v. Black, Sivalls & Bryson, 225 S.W.2d 426 (Tex. Civ.App.-San Antonio, 1949, writ dism'd). Therefore, when Fina made out their case as at common law following appellants' Rule 185 sworn denial the burden shifted to appellants to overcome that proof by some sort of affirmative defense showing avoidance. Burrus Mills, Inc. v. Hein, supra. If it was appellants' burden to plead and prove an affirmative defense then we believe it must be said that the burden was on them to secure a submission and affirmative finding on the defense pleaded;[5] i. e., the amount less than the contract price the regular gasoline was worth. This is true even though it should be conceded they have pleaded and proved an affirmative defense. Jefferson Standard Life Ins. Co. v. Curfman, 127 S.W.2d 567 (Tex.Civ.App.-Dallas, 1939, no writ). Where no issues are submitted to the jury and none requested, all controverted issues of fact, raised by pleading and supported by evidence, or which may be deduced by evidence, are waived by the party depending upon the defensive issues. Ward v. Strickland, 177 S.W.2d 79 (Tex.Civ.App.-Dallas, 1943, writ ref'd, n.r.e.).

Additionally, the jury found, with sufficient probative evidence to support such finding, that appellants accepted the regular gasoline for which recovery was allowed during the period in controversy; that Davis Bumper to Bumper through its president, E. E. Davis, detected on January 10, 1963, that the regular gasoline being delivered to his company by Fina at the time was not suitable and practicable for use in internal combustion engines; that after such detection it accepted such gasoline knowing it was not practicable and suitable for its intended purpose; that a reasonable prudent person situated as E. E. Davis, through the exercise of ordinary prudence would have detected the regular gasoline being delivered was not practicable and suitable; that after the time at which a person of ordinary prudence would have made such discovery it accepted the regular gasoline knowing it was not practicable and suitable for use in internal combustion engines; and that Davis Bumper to Bumper sold to its customers the regular gasoline knowing its quality. The evidence shows without contradiction that the regular gasoline in controversy was all sold at a gross profit by Davis Bumper to Bumper.

There is no pretense in the record that the regular gasoline was not of some value. It has been held that if warrant of fitness was breached, the measure of damages therefor was the difference between the market value of the product delivered and that contracted for. "But in such case it is necessary for the purchaser to furnish the court and jury some evidence of the difference in value on which a verdict and judgment may be predicated." Heisig Rice Co. v. Fairbanks, Morse & Co., 45 Tex.Civ.App. 383, 100 S.W. 959 (1907). Having not discharged their burden, we hold appellants' first point is without merit.

By Point 2 appellants urge reversible error in rendering judgment for $16,346.00 without a jury finding to support the same and contrary to the jury findings in Special Issue No. 2(a) that the regular gasoline was not practicable and suitable for use in internal combustion engines. Subject to the affirmative defense of deficient quality, the amount shown in the verified sworn account revealed the amount due Fina which was rendered by

5. Socony-Vacuum Oil Co. v. Aderhold, 150 Tex. 262, 240 S.W.2d 751 (1951); Rule 279, Texas Rules of Civil Procedure.

the trial court; i. e., the credits allowed subtracted from the $21,950.11 of goods, wares and merchandise give the sum of $16,346.00 rendered by the trial court, less attorney's fees and interest. We believe the point has actually been disposed of under the authorities already cited, and in view of stipulation No. 9 in the Distributory Sales Contract. The provision of such stipulation clearly was not complied with, and as a consequence Fina was deprived of its contractual right to advise the buyer the procedure to follow in each case and exercise its option to divert or withdraw from the buyer any shipment upon which claim was made.

In appellants' argument under their fifth point they admit the jury found Fina did not waive that part of the Section 9 condition of the contract providing: "Fina shall not be liable for any claim, or claims, on account of * * * quality unless before unloading the shipment, the buyer notifies Fina by telegraph." They then seek to avoid the condition by a contention that " * * * all of the evidence in the record supports the fact that Fina did waive such provision." We have studied the statement of facts carefully and are unable to agree that it supports the quote just related from appellants' brief. The issue was appellants and to support it was their burden.[6] Considering the evidence in the light of the authorities we are compelled to the conclusion that appellants did not establish waiver under Section 9. Mr. Davis stated he complained to Fina through their Mr. Ford and was assured " * * * they would amend the gasoline," but upon further questioning it developed that they received only one other load thereafter. That load was returned and credit given on it. In the Stowers v. Harper case just cited the court held: "Intention is a prime factor in determining the question of waiver. The acts, words or conduct relied upon to establish intention must be such as to manifest an unequivocal intention to no longer assert the right." The only load of regular gasoline complained about before unloading was received back by Fina, and that was the last one delivered. Credit was allowed for it. No acts, words or conduct manifesting an unequivocal intention to waive telegraphic notice before unloading any of the regular gasoline claimed to be inferior in quality and upon which judgment was rendered by its sale price are shown in the record. The right to such notice is clearly a contract prerequisite and condition precedent to the prosecution of a claim on account of quality. The second sentence of the No. 9 stipulation would indicate the reason for the requirement under the first sentence thereof; i. e., giving Fina the authority to divert or withdraw from the buyer any shipment upon which claim was made. We believe the jury resolved the question by answering in Special Issue 6(a) that Fina did not follow a course of conduct which would lead a reasonably prudent person in the position of appellants to reasonably believe that. Fina waived Stipulation 9 of its contract which stated it would not be liable for any claim or claims on account of quality unless before unloading the shipment apellants notified Fina by telegraph. It has been held: "One party to a contract will not be permitted to take advantage of his own wrongful failure to perform his part, thereby rendering performance by the other party impossible, and then escape liability." Dockery v. Durham, 3 S.W. 2d 514 (Tex.Civ.App.-Waco, 1927, writ dism'd). Point 2 is overruled.

In appellants' third point they urge reversible error of the court in rendering judgment for $16,346.00 based upon the jury's answers to Special Issues 2(b), 2(c), 2(d) and 2(e) and Special Issues 3 and 4. In the issues just mentioned the jury found

6. 60 Tex.Jur.2d 198, Section 13; The Praetorians v. Strickland, 66 S.W.2d 686 (Tex.Comm'n App.-1933); Hines v. Jordan, 228 S.W. 633 (Tex.Civ.App.-Texarkana, 1921, writ ref'd); Stowers v. Harper, 376 S.W.2d 34 (Tex.Civ.App.-Tyler, 1964, writ ref'd, n. r. e.).

appellants detected that the regular gasoline being delivered by Fina at the time was not suitable for use in internal combustion engines but accepted it so knowing; that a reasonably prudent person situated as E. E. Davis, through the exercise of ordinary prudence, would have detected its unsuitableness; that from and after the time a person of ordinary prudence would have made the discovery, appellants did detect its unsuitableness but they still accepted it knowing it was not practicable and suitable for its intended purpose; that appellants sold the regular gasoline to its customers knowing its quality; and that any loss or damages which resulted to Davis Bumper to Bumper proximately resulted from appellants' act of selling the gasoline after it had knowledge of the defects.

None of the parties have cited a case exactly in point on the question presented by the jury findings just related. Appellants contend the contract between the parties constituted an express warranty and therefore " . . . acceptance or non-acceptance thereof was of no moment." Even if we accept the contention of express warranty, which appellee vehemently denies, the record still precludes defeat of the account sued upon because of appellants' failure to comply with the condition precedent to his claim for inferior quality gasoline. Had they complied therewith appellee would have had the right and opportunity under the second sentence of Stipulation 9 to divert or withdraw from the buyer any shipment upon which claim of dissatisfaction was made, and this suit, at least in its present form, would not be in court. The issues found by the jury, related in the preceding paragraph, appear to us to indicate the jury took into account Stipulation 9 in answering such issues as they did. The point is overruled.

In Point 5 Davis Bumper to Bumper urges reversible error in not awarding it a judgment for $10,000 found by the jury to be the amount that would fairly and reasonably compensate Davis

Bumper to Bumper for loss of profits proximately caused by loss of its gasoline business due to the gasoline not being practicable and suitable for use in internal combustion engines.

The trial court refused to award such recovery for the obvious reasons that the jury also found any damages which resulted to Davis Bumper to Bumper proximately resulted from its selling such gasoline after it had knowledge of the defects and in not complying with Stipulation 9. A recognized text writer on contracts has said: "If the buyer's own fault or negligence contributed to the injury, as by using the goods with knowledge of their defects, he cannot recover consequential damages, since such damages were under the circumstances not proximately due to the breach of warranty." Williston on Contracts, Revised Edition, Vol. 5, Sec. 1394, p. 3893. See also Major v. Hefley-Coleman Co., 164 S.W. 445 (Tex.Civ.App.-Fort Worth, 1914, writ ref'd); Stark v. George, 252 S. W. 1053 (Tex.Comm'n App.-1923); Shearer v. Gaar, Scott & Co., 41 Tex.Civ.App. 39, 90 S.W. 684 (1905). Point 5 is overruled.

In Point 4 appellants assert error by the court in awarding attorney's fees against appellants jointly and severally under Article 2226, Vernon's Ann.Tex.Civil St. The statute as applicable to the instant case provides: "Any person having a valid claim against a person or corporation for * * * suits founded upon a sworn account or accounts * * *' may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

The parties stipulated that $3,000 was a reasonable amount for attorney's fees if such fees should be found to be recoverable. The thesis of appellants defense to payment of attorney's fees is that the suit is upon a written sales contract against Davis Bumper to Bumper and against E. E. Davis upon a written contract of guaranty. Therefore, the suit resting

upon special contract rather than upon a sworn account, attorney's fees are not recoverable. The action against Davis Bumper to Bumper was instituted in the nature of a sworn account on one of the seven classes of claims which form a basis for an award of attorney's fees under Article 2226, Revised Civil Statutes of Texas, if a plaintiff is represented by an attorney. Van Zandt v. Fort Worth Press, 359 S.W. 2d 893 (Tex.1962). The written agreement appellants say the suit against Davis Bumper to Bumper was based upon became a part of the suit only by way of defense to appellants' affirmative defensive pleading. The bases of the cause of action were sales on one side and purchases upon the other whereby title to personal property passed from one to the other (regular gasoline, premium gasoline, diesel fuel and pennants) and relation of debtor and creditor was created by general course of dealing. Transactions between parties resting upon special contract as discussed by the Supreme Court of Texas in Meaders v. Biskamp, supra, relied on by appellants, had as its basis a contract whereby Biskamp allegedly sold five leases to Paul Meaders, Sr. upon one of which he was to drill an oil well to a certain depth. For the leases and such drilling Meaders was to pay $25,000. The Supreme Court of Texas said: "The claim of plaintiff against defendant is a claim for the balance of the money due for a sale of real estate (oil and gas leases) and for the drilling of a well to a depth of 4,000 feet. It has been held that a contract for the drilling of an oil well is not included within the definition of a sworn account." The court also held, " * * * a sworn account * * * applies only to transactions between persons, in which there is a sale upon one side and a purchase upon the other, whereby title to *personal* property passes from one to the other, and the relation of debtor and creditor is thereby created by general course of dealing * * * ." This rule had its origin in the landmark case of McCamant v. Batsell, 59 Tex. 363 (1883), and appears to have been adhered to by that court ever since. See also Dan-

aho Refining Company v. Dietz, 398 S.W.2d 307 (Tex.Civ.App.-Corpus Christi, 1965, writ ref'd, n.r.e.).

We believe and so hold that attorney's fees are recoverable against E. E. Davis jointly and severally by virtue of his agreement " * * * that jointly with the principal and severally I shall be liable and responsible for and shall pay to you all sums that may be due or become due by the principal promptly upon demand, regardless of the sum of the indebtedness, whether the same is represented by open account, notes or otherwise, or whether due at maturity or upon extension or renewal thereof, and that the terms agreed upon by you and the principal shall be fully binding upon me without notice."

He thus became contractually liable for attorney's fees if they are recoverable against the principal. We believe they are.

There appearing to us to be no reversible error, the judgment of the trial court is affirmed.