**TEX–CRAFT BUILDERS, INC., et al., Appellants,**

v.

**ALLIED CONSTRUCTORS OF HOUSTON, INC., et al., Appellees.**

**No. 536.**

Court of Civil Appeals of Texas, Tyler.

March 25, 1971.

Rehearing Denied April 22, 1971.

Mays, Moore, Dickson & Roberts, Aubrey L. Roberts, Jr., Sweetwater, for appellants.

Sallas, Griffith & Meriwether, Joe E. Griffith, Crockett, for appellee National Standard Ins. Co.

Sallas, Griffith & Meriwether, Joe E. Griffith, Crockett, Landis, Gregory & Mullins, Buddy W. Gregory, Houston, for appellee Allied Constructors of Houston, Inc.

MOORE, Justice.

This is a suit by a subcontractor against a prime contractor and its surety upon a performance bond, wherein prime contractor filed a cross-action against subcontractor and its surety upon a performance bond. Appellant, Tex-Craft Builders, Inc.,[1] the prime contractor, contracted to construct a public housing project in the city of Crockett, Texas, with appellant, Continental Casualty Company of Chicago, Illinois, Inc.,[2] acting as surety upon Tex-Craft's performance bond. As prime contractor, Tex-Craft entered into a subcontract with appellee, Allied Constructors of Houston, Inc.,[3] for the concrete work, consisting of streets, parking areas, gutters, sidewalks, patio and house slabs, with appellee, National Standard Insurance Company, acting as surety upon Allied's performance bond. The subcontractor called for a total payment to Allied of the sum of $99,765.00 and was based upon an agreed schedule of unit prices and the amount of concrete furnished. Allied alleged that in addition to the specific unit prices agreed upon, the contract also provided that Tex-Craft had authority to require changes, deviations and additions to the work; that in the event such changes and additions were made, it was agreed that the contract price was to be adjusted accordingly; that Tex-Craft subsequently made certain changes and additions and refused to pay Allied the sum of $65,365.63 due and owing under the terms of the contract. Tex-Craft answered with a general denial, denying that it owed Allied any amount of money upon the contract and also filed a cross-action against Allied alleging that Allied failed and refused to perform its contract according to the schedule of unit prices; that as a result Tex-Craft was required to complete the concrete work called for in the contract at a cost of $53,470.00 for which amount Tex-Craft prayed judgment over against Allied and the surety on its performance bond.

After a trial before the court, sitting without a jury, the trial judge entered judgment in favor of Allied against Tex-Craft and Continental, jointly and severally, for the sum of $25,219.11 and denied Tex-Craft any relief upon its cross-action.

1. Hereinafter referred to as "Tex-Craft."

2. Hereinafter referred to as "Continental."

3. Hereinafter referred to as "Allied."

From said judgment, Tex-Craft and Continental have perfected this appeal.

Findings of fact and conclusions of law were filed by the trial judge. Among other things, the court found that (a) the contract between Tex-Craft and Allied provided that Tex-Craft could require changes in, deviations from, additions to and omissions from the work therein contracted, and, that in such event, the contract price would be adjusted accordingly; (b) Continental Casualty Company of Chicago, Illinois, executed, as surety, for Tex-Craft, a performance bond which provided that all claimants thereunder would have a direct right of action against the surety; (c) Allied commenced work under the terms of said contract with Tex-Craft shortly after the execution thereof and performed its work under the terms of said contract in accordance with the terms thereof and in good workmanlike manner until Tex-Craft unilaterally undertook to complete certain remaining portions of the work provided for under said contract to be done by Allied; (d) Allied substantially performed its said contract with Tex-Craft and completed numerous, expensive extras and changes to said contract. Additionally, Allied was at all times ready, willing and able to perform its contract with Tex-Craft; (e) the work performed by Allied pursuant to its contract with Tex-Craft was in accordance with the plans and specifications provided for in such contract and in Tex-Craft's contract with the housing authority with the city of Crockett, except only in those instances where changes, extras, alterations or additions were required of Allied by Tex-Craft; (f) in late August, 1965, W. J. Grierson, Allied's president, conferred with Mr. Turner in the bonding department of Continental Casualty Company of Chicago, Illinois, concerning his company's future prospect for payment from Tex-Craft, and was advised that if Continental was the surety on the bond, there would be no problem with payment and that Mr. Grierson should not worry about it; (g) Continental had repeated actual notice and knowledge of Allied's specific claim by virtue of being furnished with the original, and/or copies of correspondence from either Tex-Craft, Allied or the housing authority of the city of Crockett; (h) Duane Fossler, vice president of Tex-Craft, talked to representatives of Continental and fully advised and notified them of the claim of Allied and the billings received from Allied as they were received; (i) Continental received, prior to Tex-Craft's assumption of the remaining work under the contract, a full itemization of the work done by Allied, the dates thereof, the amounts thereof and all lawful offsets, credits and payments; and (j) there remains due and owing to Allied by Tex-Craft for work performed under the terms of said contract, after all offsets, payments and credits the sum of $25,219.11. In the conclusions of law, the court found that (1) Allied substantially performed its contract with Tex-Craft; (2) Tex-Craft, without cause, breached its contract with Allied by failure to make payments as agreed upon and by unilaterally undertaking to complete the terms of Allied's contract with it; (3) because of its conduct, Continental Casualty Company of Chicago, Illinois (Continental) is estopped from claiming a lack of adequate notice of Allied's claim against Tex-Craft and Continental; (4) Continental had repeated, actual, timely, substantial and sufficient notice of Allied's claim against Tex-Craft and Continental; (5) Continental waived any further compliance with the notice provisions of Article 5160, Vernon's Ann.Civ.St., regarding Allied's said claim; (6) Allied substantially complied with the notice requirements of Article 5160, V.A.C.S., in making its claim against Tex-Craft and Continental; (7) Allied instituted its suit against Tex-Craft and Continental within the time prescribed by law; (8) after all just and lawful offsets, payments and credits, there remains unpaid to Allied by Tex-Craft under the provisions of their contract, the sum of $25,219.11, for which sum both Tex-Craft and Continental are liable to Allied and Allied is entitled to judgment in such amount together with interest there-

on and costs of court against both Tex-Craft and Continental; and, (9) neither Allied nor National Standard Insurance Company, Cross-defendants, have any liability to either Tex-Craft or Continental.

Appellants bring forward numerous points of error attacking the trial court's findings on the ground that such findings were not supported by the evidence. By the first group of points, they contend (a) that there is no evidence to support the trial court's findings that Allied substantially performed the contract and (b) that there is no evidence that Allied was prevented from completing the contract due to the wrongful acts of Tex-Craft.

■ In determining the "no evidence" points, we are required to follow the elementary rule that if the record contains any evidence of probative force to support the trial court's findings, such findings may not be disturbed on appeal. Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97, 99. In determining whether such findings are supported by any evidence of probative force, we must give credence only to the evidence favorable to the findings and disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex., 1965).

■ The record before us does not disclose whether the judgment in favor of Allied is based upon the finding that Allied substantially performed the contract, or was prevented from doing so by the wrongful acts of Tex-Craft, or whether the judgment of $25,219.11 was awarded to Allied for extra work performed at the request of Tex-Craft. It is undisputed, however, that Allied did not complete the contract. According to the undisputed evidence, Allied completed only about 75–85% of the work. Allied admits that while the contract called for the laying of 68 building slabs containing a total of 95,046 square feet, Allied laid only 58,037 square feet. It was also admitted that although the contract called for 66,800 square feet of sidewalk, only 41,826 square feet was laid. Under these

circumstances we cannot agree with the finding that Allied substantially performed its contract. While "substantial performance" of a building contract does not mean an exact performance in every slight and unimportant detail, it means a performance of all important particulars and permits only such omissions or deviations from the contract as are inadvertent and unintentional, and are not due to bad faith, do not impair the structure as a whole, and are remedial without doing material damage to the other parts of the construction project. 10 Tex.Jur.2d, Building Contracts, sec. 21, p. 25; Atkinson v. Jackson Bros., 270 S.W. 848 (Tex.Com.App.). It thus appearing that the contract had not been substantially performed in accordance with the above equitable principles, we agreed with appellants' contention that the trial court's judgment cannot be sustained upon such theory.

Appellants further assert that the judgment cannot be sustained upon the theory that appellant prevented appellee from completing its contract because they say the evidence shows without dispute that Allied abandoned its contract. When viewed in a light most favorable to Allied, the evidence shows that Allied had completed approximately 81% of the concrete work at the time it ceased work. According to Allied, the reason it took its men off the job was because Tex-Craft had failed to prepare the ground work for the concrete. W. J. Grierson, Allied's president, testified that at the time he took his crew off the job in the latter part of October, 1965, he advised Tex-Craft that he would return and complete the job just as soon as the preparatory ground work was completed by Tex-Craft. He admitted that Tex-Craft later contacted him requesting him to return and finish the work. He testified, however, that on each occasion, he found that Tex-Craft had not done the preparatory ground work so that the concrete could be laid, or at least they had performed only a very small part thereof so that he could not bring his crew back and do the job on a piecemeal basis. Finally, he testified that upon a subsequent inspection visit to the job, he found

that Tex-Craft, without his knowledge or consent, had poured a substantial part of the remaining concrete work required under Allied's contract.

The rule is well settled that there may be a recovery on the contract for part performance of an entire contract if complete performance has been prevented by the other party. 17 Am.Jur.2d, p. 826; Trahan v. Federal Sign Company of Texas, 412 S.W.2d 814 (Tex.Civ.App., Houston, 1967, n. w. h.). Stated in another way, where a party in whose favor something is to be done prevents that performance and the other party is not in default, a recovery may be had as if the act had been performed. Dodds & Wedegartner, Inc. v. Reed, 69 S.W.2d 165 (Tex.Civ.App., Dallas, 1934, writ dism.); Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744 (1937); Davis Bumper to Bumper, Inc. v. American Petrofina Company of Texas, 420 S.W.2d 145 (Tex.Civ.App., Amarillo, 1967, ref., n. r. e.).

As we view the record, there is some evidence of probative force to sustain the finding that Tex-Craft prevented the full performance of the contract. It is without dispute that Tex-Craft with the consent of Allied performed work called for by the contract. The evidence offered by Allied shows that as of November 3, 1965, it had performed specific items of work required by the contract as well as extra work requested by Tex-Craft in the total sum and amount of $137,298.29. Of this amount, Allied admitted that Tex-Craft had paid the sum of $67,762.54. Thus, according to the evidence adduced by Allied, evidenced by Allied's itemized bill of November 3, 1965, there was a balance due and owing it on said date in the amount of $69,535.75. While Tex-Craft disputed many of the items contained in the itemized invoice and claimed back charges for concrete work required to be corrected, nevertheless Tex-Craft, in response to Allied's bill of November 3rd, advised Allied, by letter, that based upon official reports of the housing authority and the architect's estimate of total gross progress to that date, Allied was due the sum of $85,197.52 of which $67,516.52 had been paid. Thus, this evidence, viewed in a light favorable to the findings, indicates an admission on the part of Tex-Craft that as of that date, Allied was due something in excess of $17,000.00. While we recognize that much of the evidence is conflicting, we nevertheless believe that there is at least some evidence of probative force to support the trial court's findings that Allied was entitled to compensation by reason of the fact that it was prevented from performing the contract as well as for compensation for extra work performed. Appellants' no evidence points are accordingly overruled.

After a review of the entire record, and upon weighing all of the evidence, both that in favor of and against the findings and judgment, we have concluded that appellants' proposition that the judgment is against the overwhelming weight and preponderance of the evidence is without merit.

It follows, therefore, that if Allied was prevented from performing its contract and entitled to recover on that basis, Tex-Craft would not be entitled to recover any of the amounts alleged to have been expended by it in completing the contract as sued for in its cross-action. Accordingly, all of appellants' points asserting that the evidence shows, as a matter of law, that Tex-Craft was entitled to recover for work performed in completing the contract are overruled. As to Tex-Craft's claim for back charges for work corrected, the trial court, by refusing to make findings thereon, apparently concluded that Tex-Craft failed to establish its claim by a preponderance of the evidence. We are not prepared to hold that the record shows that such claims were established as a matter of law. Appellants' points so contending are overruled.

By other points of error, appellants complain of the action of the trial court in refusing to make additional requested find-

ings of fact. As we view the record, these points are without merit. In the first place, each of such requested findings calls for findings upon evidentiary matters and not for findings of ultimate fact issues. The cases are legion holding that the trial court is not required to make findings upon facts which are merely evidentiary. Secondly, the record before us contains a full statement of facts. The refusal by the court to make such additional findings has not, and will not, in any way prevent appellants from making a proper presentation of their case in this court since the statement of facts includes all of the evidence adduced at the trial. Appellants have not attempted to demonstrate how the refusal to make such additional findings resulted in any harm to them and therefore the error, if any, is harmless. Rule 434, Texas Rules of Civil Procedure; Adams v. Houston Belt & Terminal Railway Company, 405 S.W.2d 838 (Tex.Civ.App., Houston, 1966, n. w. h.); Blair v. Blair, 434 S.W.2d 943, 948 (Tex.Civ.App., Dallas, 1968, n. w. h.).

We turn now to the points of error presented by appellant, Continental, challenging the judgment against it as surety. Continental attacks the judgment against it on the grounds that there was no evidence and that the evidence was factually insufficient to support the finding that Continental had "notice" of Allied's claim as required under the provisions of Article 5160, V.A.C.S., sec. B(a).

The statute provides, in substance, that as a condition precedent to suit against the surety, the claimant shall, within 90 days, after the 10th day of the month next after furnishing labor or material, notify the prime contractor by certified or registered mail of his claim, and shall accompany such notice with a sworn statement, stating that the amount claimed is just and correct and all lawful offsets, payments and credits have been allowed. It is undisputed that at no time did Allied ever serve Tex-Craft or Continental with any notice or sworn statement of its account by registered mail as required by the statute. Continental

was not joined as a party to the suit until approximately one year after Allied instituted suit against Tex-Craft.

While Allied does not contend it gave Continental notice by certified or registered mail, Allied urges the judgment must be sustained because Continental had actual knowledge of the claim. Therefore Allied argues that there was substantial compliance with the statute. In this connection the record shows that Allied forwarded Continental a copy of the itemized statement dated November 3rd furnished Tex-Craft. The statement was in the form of an invoice or bill. Neither the original furnished Tex-Craft nor the copy forwarded to Continental was sworn to as required by statute. Allied adduced other testimony showing that a vast amount of correspondence between Allied, Tex-Craft and the housing authority concerning Allied's claim was forwarded to Continental. None of these items however was sent by registered or certified mail. Insofar as we have been able to determine there is nothing in the record showing that any of the correspondence was properly addressed and actually posted in the mail. Moreover there is nothing in the record showing that Continental ever received the itemized bill or any of the correspondence. Consequently we cannot agree with the trial court's finding that Continental had actual knowledge of the claim by reason of the correspondence allegedly forwarded by mail, nor do we believe that the various telephone conversations between officials of the housing authority and Continental concerning Allied's claim were sufficient to charge Continental with actual knowledge of the claim. As we construe the testimony, the telephone conversations did nothing more than advise Continental that a controversy existed. Under the circumstances we do not believe the evidence sufficient to establish actual knowledge of the details of the claim as required by the statute.

Allied further urges that the judgment must be sustained on the basis of the trial court's finding of waiver and estoppel

on the part of Continental. In this connection, Allied claims that Continental waived the requirement of notice and is estopped to deny notice because of a certain telephone conversation between Mr. Grierson, its president, and a Mr. Turner who he identified as being in the bonding department of Continental. The evidence shows that sometime in August, 1965, Mr. Grierson heard rumors concerning the solvency of Tex-Craft and became concerned about his company's future prospect for payment. He heard that Continental was the surety on the bond and called Continental's office in Houston, Texas and talked to a Mr. Turner. As we understand his testimony relating to the conversation, there was some question on the part of Mr. Turner as to whether or not Continental was the surety on that particular job. At any rate Mr. Grierson testified that Mr. Turner advised him that if Continental was the surety on the bond he had nothing to worry about; that it would be taken care of. Nowhere in his testimony does he say that he told Continental that he was making a claim or state the amount thereof. Moreover the telephone conversation took place several months before Allied delivered Tex-Craft its itemized statement of account. Insofar as we have been able to determine the telephone conversation is the only evidence that Continental ever said or did anything regarding Allied's claim.

It has been held that compliance with the notice provisions of Article 5160 may be waived. General Insurance Company of America v. Smith and Wardroup, Inc., 388 S.W.2d 262 (Tex.Civ.App., Amarillo, 1965, ref., n. r. e.). Waiver depends solely on what the obligor does; estoppel depends on what he has caused his adversary to do. Graham v. San Antonio Machine and Supply Corporation, 418 S.W.2d 303 (Tex.Civ.App., San Antonio, 1967, ref., n. r. e.). A waiver of strict compliance with the notification requirements of Article 5160 occurs when the surety after receiving a defective or improper notice has by its own affirmative acts and conduct created an impression that the notice given is adequate, i. e., the surety makes some response to the defective notification. United Benefit Fire Insurance Company v. Metropolitan Plumbing Company, 363 S.W.2d 843 (Tex.Civ.App., El Paso, 1962, n. w. h.).

As we view the record, there is no evidence that Continental ever did anything or said anything indicating any intention to relinquish its right to insist upon notice of the claim as required by the statute, nor have we been able to find anything in the record showing that Continental did or said anything leading Allied to believe that a notice of claim would not be required thereby causing Allied to fail to file its claim.

Allied had the burden of establishing notice as provided for under the statute. H. Richards Oil Company v. W. S. Luckie, Inc., 391 S.W.2d 135 (Tex.Civ.App., Austin, 1965, ref. n. r. e.). In the absence of any evidence showing either statutory or actual notice and in the absence of any evidence raising either the issue of waiver or estoppel, Allied's proof fails to establish a cause of action against Continental. Accordingly that portion of the trial court's judgment entered against Continental must be reversed and rendered in favor of Continental. In other respects the judgment is affirmed.

Affirmed in part and reversed and rendered in part.