**KNOX–EVANS CONSTRUCTION COMPANY, Appellant,**

v.

**HAWS & GARRETT GENERAL CONTRACTORS, INC., Appellee.**

**No. 16144.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 19, 1973.

Rehearing Denied Nov. 29, 1973.

Malone, Murphy & Fenley, W. R. Malone, Huntsville, for appellant.

Shannon, Gracey, Ratliff & Miller, Vic Anderson, Jr., Fort Worth, for appellee.

PEDEN, Justice.

Venue matter. Plaintiff appeals from the granting of defendant's plea of privilege to be sued in Tarrant County. Plaintiff relied on Subdivision 23 of the venue statute.

Appellant's only point of error is that the trial court erred in sustaining the plea of privilege of the corporate appellee because the appellant proved by a preponderance of the evidence a cause of action in quantum meruit and for breach of a contract which was to be performed in the county where suit was brought and part of the cause of action arose in that county.

In its petition plaintiff Knox-Evans alleged that on May 16, 1972 it had entered into a contract to do certain concrete work, furnishing certain materials and labor to defendant Haws & Garrett, the general contractors on a warehouse construction job in Harris County, for which Knox-Evans was to be paid the sum of $50,250. That plaintiff proceeded to perform under the contract as well as possible in view of defendant's actions, but defendant abrogated the contract by 1) making it impossible for plaintiff to begin work until on or about June 8, 1972 by refusing to make the job site ready to receive materials before then and 2) continually requiring plaintiff, over its protest, to use methods of construction which deviated markedly from accepted standards of good workmanship, in order that defendant could complain that plaintiff's work was of inferior workmanship and was unacceptable and could refuse to pay the agreed price, which course defendant has taken.

That between June 8, 1972 until August 15, 1972 plaintiff had furnished "the following materials as inputs" to the concrete warehouse building, and they had the following reasonable values:

| | |
|---|---|
| Sand fill and levelling | $ 2,798.00 |
| Form material given away by defendant | 1,500.00 |
| All piers and about 75% of the foundation slab, plus all walls needed to construct the building | 53,784.60 |
| Total | $58,082.60 |

That defendant accepted the benefit of all these inputs to the job, used them to complete it, but has only paid the plaintiff $24,840. and refuses to pay the balance due, to plaintiff's damage of $33,242.60.

Under Subdivision 23 of the venue statute, Art. 1995, Vernon's Ann.Texas Civil Statutes, a plaintiff must show all elements of cause of action against the corporate defendant whose plea of privilege is being contested, and being the same cause of action alleged and relied upon in the petition and the controverting affidavit. Where one element of the claim is legal injury, plaintiff must establish some injury. 1 McDonald, Texas Civil Practice 518, 519, Venue § 430.2.

The only witness who testified at the venue hearing was Mr. Paul Knox, president of Knox-Evans.

Plaintiff introduced in evidence a copy of the contract. Its provisions included those we have noticed. It also stated that completion date was August 31, 1972 and that partial payments shall be made monthly on 90% of the value of the work incorporated into the project, leaving a balance of 10% of the value of the completed work at all times unpaid, which balance shall become due and payable only upon acceptance of the project by Haws & Garrett and the owner or architect.

Further, the contract states "The Subcontractor shall at his own cost amend and make good any defects in his work which may appear either within twelve months after the completion of this contract, or such other longer warranty as may be

specified. Should the Sub-contractor refuse or fail to amend and make good such defects within fourteen days after receiving notice to do so, Haws and Garrett, General Contractors, Inc., shall have the right and privilege to make good such defective work at the expense of the Sub-contractor."

Mr. Knox testified that his company was ready to begin work under the contract on May 20, 1972, but that it could not because the job site was not prepared. Had Knox-Evans been allowed to start on May 20, about 95% of the job could have been completed by the completion date specified in the contract, August 31, 1972.

As to his qualifications, Knox said he has (as of January 22, 1973) been in the contruction business for 22 months and is familiar with prices of masonry and concrete construction work in Harris County. (This means that he had been in that business for one year when the contract was signed.) He has a master's degree in mathematics from Sam Houston State University, was a college professor in mathematics for five years, was a registered surveyor for three years and is now a contractor, developer and builder. He associated with others in his company and with sub-contractors who had more experience in building. He knows the proper method of pouring concrete and knows what will and will not weaken concrete structures.

He observed at least two departures from a good and workmanlike manner of building the warehouse in question. First, a minor departure, was that Haws & Garrett's job superintendent instructed Knox-Evans' men to go ahead and complete the day's work by pouring the last two sections of the concrete slab during a very heavy rainfall. This causes a problem in getting a satisfactory finish.

The major departure from accepted practice was the method used in capping the pier holes around the building that were to support the concrete walls. The architectural plans show the piers should be poured in one continuous pour, not in two pours. Despite Knox-Evans' protest, the Haws & Garrett's superintendents instructed them to make a preliminary pour of about seven feet, then a second pour, a few days later, of a two-foot cap. More reinforcing steel should have been used to keep the cap from moving, because the piers support a mass of concrete that is 17 ft. X 26 ft. X 6 in.

Knox-Evans' last day on the job was about August 15. So far as he knows, Knox-Evans' work has been used by Haws & Garrett and none of it has been disposed of. Knox-Evans left about $1500 worth of form material on the job so it could be finished. The job superintendent said he gave it away as scrap.

Mr. Knox testified that in his opinion the reasonable market value of the inputs and materials furnished to the defendant in Harris County at the time furnished was $58,082.60, of which $24,840. has been paid. This suit is for the remainder. He testified that the defendant's response to his request for payment was that no money was due because of delays and the redoing of the work.

On cross-examination, Mr Knox admitted that neither he nor his company had ever before done any tilt-up construction work, the type involved in this job. There was to be a 41,000 square foot slab and 51 wall panels were to be poured and raised. He admitted that the architectural plans just show a pier hold diagram, they don't show how to accomplish the pouring of the piers. He also admitted that he didn't know, in tilt-up construction, the standard practice in the pouring of piers. He didn't know whether or not it was the standard precedure to pour a part of the pier and then add the cap. He said that when the first two or three wall panels were raised, at least one of the piers gave way and crumbled completely. The basic reason given was that some of the area above the cap pier was full of mud and water, and the trouble may have been caused by his

failure to clean it out. All piers were cleared by the job superintendent before they were poured. Knox was the subcontractor to do all the concrete work, and was in charge of it. The contract doesn't provide that Haws & Garrett were to provide superintendence.

He said the slab poured during the rain was acceptable to the job superintendent. "We were never requested to jackhammer anything out. The building stands as it was almost in its entirety when we left the job August 15."

Knox related that Mr. Ken Garrett told his company that it was the worst work that had ever been seen. Knox said the forms were squared before the panels were poured, but he didn't know whether the panels were square; they were accepted by the job superintendent. The ouside piers were on grade when the caps and when the weld plates were put on. Knox said he understood that about five out of eighty piers had to be dug up and re-poured because mud had gotten under their caps. All were dug up to see if there were other problems.

Two or three of the panels stuck to the slab when they were pulled up. They had to have substantial re-working done on them. Knox said when he made an inspection in November he saw only five or six small hairline cracks that had been patched.

He got a letter from Mr. Garrett dated August 18, 1972 stating that the defendants were beginning to take steps as necessary to make the work good and to charge it against the contract. That if plaintiffs cared to do the work, participate or supervise it, it was imperative they put an adequate force of competent people on the job immediately.

Knox agreed that under the contract and within "the limits of what is acceptable work" it was his company's duty to fix whatever part of the concrete work didn't turn out right. He said his company followed the instructions of Haws & Garrett's job superintendent, as it was told to do. Haws & Garrett could have approved the job at the end or they could have approved it piecemeal as the work was being done.

Knox said he is not aware of any trouble with leveling or straightening of piers or beams. He doesn't know whether the architect ever approved his company's work. Haws & Garrett didn't approve the total job.

Knox said that it is true that the contract provides that Knox-Evans shall make good any defect that is its fault which may appear within 12 months after completion or longer if a longer warranty time is specified. He did not observe that the roof line was too far out of square or level. The plans call for a one-inch gap between wall panels. It is to be caulked.

He met with Haws & Garrett's job superintendent after receiving Garrett's letter and was told that everything could be worked out. That in about two weeks Haws & Garrett would be ready for him to come back and finish it. They didn't call him back and he didn't ever finish it.

He furnished extra work on the job for which he should have been paid $12,957.60.

Neither findings of fact nor conclusions of law were made.

■ As to the plaintiff's contract theory of recovery we hold that under the evidence in this case the trial judge was entitled to conclude that the plaintiff failed to sustain its burden of proof that after correction of the admitted defects the reasonable value of the work done was more than the $24,840 already paid.

■ Opinion testimony is but evidentiary and the circumstances must be highly exceptional when such testimony, even if not contradicted by an opposing expert, must be deemed true as a matter of law. This is particularly true when the expert's experience in the field is limited and when

he is an interested witness. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948); Luttes v. State, 159 Tex. 500, 324 S.W.2d 167, 189 (1958). Nor can we say that his testimony as to construction methods was clear, consistent and positive.

For the same reason, we hold that as to the appellant's quantum meruit theory the trial court's presumed finding in support of its order should be upheld. The trial court is not required to accept the opinion testimony of the president of Knox-Evans, Mr. Knox, and find that the reasonable value of the work done and materials furnished was more than the $24,840 already paid.

With regard to the sufficiency of the evidence, the test on appeal from an order sustaining or overruling a plea of privilege is the same as in any other civil case. Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953).

Affirmed.

## ON MOTION FOR REHEARING

The appellant says that it had no burden of proof as to damages because the evidence conclusively established as a matter of law that the appellee had prevented the appellant from completing performance under the contract.

It was held in Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744 (1937) and in Tex-Craft Builders, Inc. v. Allied Constructors of Houston, 465 S.W.2d 786 (Tex.Civ.App.1971, writ ref., n. r. e.) that the applicable rule is: "where a party in whose favor something is to be done prevents that performance and the other party is not in default, a recovery may be had as if the act had been performed."

Even if we could say that the evidence compels a finding that appellee prevented appellant from completing its performance of the contract we would still be unable to say, from the record in this case, that the trial court was not entitled to make a presumed finding that the appellant was in de-

fault. Stated another way, we cannot say that the appellant was wrongfully prevented from performing the remainder of its contract.

Appellant's motion for rehearing is overruled.