## STRICKLAND et al. v. WARD et al.
### No. 13586.

Court of Civil Appeals of Texas. Dallas.
Jan. 12, 1945.

John Davis, of Dallas, for appellants.

John D. Cofer, of Austin, and W. J. Durham, of Dallas, for appellees.

BOND, Chief Justice.

This is a suit in nature of bill of review filed in a district court of Dallas County, Texas, to set aside a judgment of this court, Ward v. Strickland, 177 S.W.2d 79 writ refused, and for retrial of the issues which were involved, on the ground of newly discovered evidence.

We are at liberty, as was the trial court (as held in Griffith v. Tipps, Tex.Civ.App., 69 S.W.2d 846), to judicially notice the record in the original suit; thus it will be observed the issues were that Ward and Strickland entered into an oral agreement in which Strickland agreed that, if Ward was required to pay a debt represented by two notes mentioned in the record, ninety-three shares of stock issued by the Excelsior Life Insurance Company and in name of Strickland would be transferred to Ward; and that Strickland breached such agreement in March 1943, by forcing Ward to pay the notes. The Excelsior Life Insurance Company intervened pro forma to carry out the judgment that should be rendered. The primary question submitted to the jury was whether or not Strickland entered into the contract, plaintiff assuming affirmatively the burden of proof. The defendants, aside from denying that H. Strickland entered into the contract with Ward, interposed numerous special defenses, among which, pertinent here, was that a conspiracy of long-standing was entered into by E. E. Ward, C. E. Jones and A. Prestwood, the minority stockholders in Excelsior Life Insurance Company, to cheat and defraud H. Strickland, deceased, and his estate and legatees out of the major portion of the stock in Excelsior Life Insurance Company owned by Strickland at the time of his death, and to enable the three to become owners of the majority, thus the controlling and managerial factors in the corporation; and, to

that end, Ward, Jones and Prestwood conspired to swear falsely, to the alleged oral and verbal agreement to acquire the title to the ninety-three shares of stock, and have same transferred on the books of the corporation.

 The record in the original suit shows that no special defensive issues were submitted to the jury and none requested; hence, all controverted issues of fact raised by pleadings and supported by evidence, or which may have been reasonably deduced from the evidence, were waived by defendants. The jury found that the contract was entered into by Ward and Strickland, and the uncontroverted evidence showed the breach, to which findings defendant raised no objection in the court below and no adverse criticism was presented to this court on appeal; hence the judgment was entered in favor of Ward.

In this case, the same defensive issues as in the original suit are pleaded, and the testimony alleged to be newly discovered is that Amy Prestwood would or could give testimony bearing on the alleged conspiracy. In limine, on motion of the defendant to dismiss the suit, the court heard testimony.

Amy Prestwood testified by deposition, to the effect that sometime about May 1942, in conversation with her husband, A. Prestwood, he told her that the original suit instituted by Ward against Strickland was a three-cornered affair; that, in the event Ward won the suit, the ninety-three shares would be equally divided among the three —Ward, Jones and Prestwood; and that they did not want Mrs. Strickland, who held the majority stock in the corporation, to be President of the Excelsior Life Insurance Company. A. Prestwood also testified by deposition that he did not have any such conversation with his estranged wife, who was suing him for divorce, and that no such conspiracy as alleged by plaintiff and testified to by her was ever entered into by him and the other two alleged conspirators to get control of the ninety-three shares of stock. E. E. Ward testified that he had no such agreement with Prestwood and Jones; that he offered no false testimony in the trial of his case against Strickland by and under which he was able to win the suit against Mrs. B. J. Strickland, et al, and that he made no agreement that if he recovered the ninety-three shares of stock in the corporation, the three would

be equally interested therein and have a majority, thus the control and management of the corporation. C. E. Jones testified to the same effect, as did Ward and Prestwood.

In the record of the original suit, E. E. Ward is credited with relating that he told Mrs. B. J. Strickland in March 1942, and her attorney before suit, of the facts and circumstances surrounding the making of the oral contract with H. Strickland. And in briefs on the former appeal, appellees, (appellants here), in discussing the facts of the case, confessed "there is no controversy revealed by the record as to the existence and contents of the alleged oral contract not in writing. All testimony offered on this subject was offered by plaintiff (E. E. Ward) and the testimony as to the existence and contents of such oral contract is full and complete, even though the witnesses testify that they were advised by Strickland and Ward of such contract and its existence one time only and this was more than five years before the suit was filed." At the conclusion of the testimony the trial court sustained defendants' motion to dismiss the bill of review, accordingly entered judgment from which this appeal is prosecuted.

The only point raised by appellants is that a "Bill of review will lie in the district court after judgment of an appellate court and after mandate has been issued for observance without leave granted by appellate court, where new matter or newly discovered evidence constitutes the ground of the bill, and the Honorable District Court erred in not so holding."

 We are in accord with the view that a trial court, in the exercise of its equity powers, where a judgment has been obtained by fraud, has authority in a suit brought expressly for that purpose, where the same parties and the same subject-matter are involved, to grant relief against its former judgment as equity and justice demand; and that this power extends to judgments of the appellate courts, where the petition is based on sufficient grounds of fraud, accident or mistake; Houston E. & W. T. R. Co. v. Cavanaugh, Tex.Civ. App., 194 S.W. 642. But where rights are established by the appellate court, a suit brought in an inferior court by any of the parties to such judgment, against those in favor of whom the judgment was rendered, and the suit directly involves the relitigation of the rights established by the

judgment, such suit will not be sustained. Conley v. Anderson, Tex.Sup., 164 S.W. 985; Hovey v. Shepherd, 105 Tex. 237, 147 S.W. 224; City of Palestine v. City of Houston, Tex.Civ.App., 262 S.W. 215; Yount-Lee Oil Co. et al. v. Federal Crude Oil Co., et al., Tex.Civ.App., 92 S.W.2d 493. In Harris et al. v. Hamilton, et al., Tex.Civ.App., 234 S.W. 684, 686, where the appellate court judgment was attacked, and the trial court on receiving the mandate attempted to retry the issues previously determined, the court said: "For the trial court to have retried all the issues, as contended for by appellants, would have been to have ignored and set aside the judgment of the Supreme Court", citing the opinion of the Supreme Court in Kendall & Harcourt v. Mather, 48 Tex. 585, 597, that "The assumption by the district court of the right to disregard and set aside the judgment of this court is evidently in palpable and direct conflict with its jurisdiction, and has not even the color of authority for its support or justification. However foreign this may have been from the intention of the judge, as we have no doubt it was, his action in thus disregarding its mandate was a contempt of this court, and a virtual denial and repudiation of its appellate power and jurisdiction." So, in the case at bar, if the bill of review had been granted, it would have been necessary to directly relitigate rights established by the judgment in the original suit, and abrogate the decision of this court, approved by the Supreme Court.

■ It will be further observed in the bill that appellants make no charge of "extrinsic fraud" against appellees in whose favor the judgment was rendered. At most, the alleged newly discovered testimony of Amy Prestwood is impeachment of her husband, Arthur Prestwood, who testified, among other things, to the existence of the oral contract. If judgments are to be reopened and attacked on the grounds of false testimony introduced in their procurement, or by newly discovered testimony to impeach some witness who gave favorable or unfavorable testimony in the case, it is obvious that there would be no end to suits by the losing parties. Reed v. Bryant, Tex.Civ.App., 291 S.W. 605, contains an extensive discussion of the question and a review of the authorities. The following is pertinent, 15 R.C.L. page 770: "It has been well said that every litigant enters upon the trial of a cause, knowing not merely the uncertainty of human testimony when honestly given, but that, if he has an unscrupulous antagonist he may have to encounter frauds of this character, and that he must take the chances of establishing his case by opposing testimony, and by subjecting his opponent's witnesses to the scrutiny of a searching cross-examination. Hence, the case is none the less tried on its merits and the judgment is none the less conclusive by reason of the false testimony produced. * * * Since every losing litigant may consider himself the victim of false testimony and believe it to be willfully false, and that his adversary knew it to be so, if relief should be freely granted in equity against a decision in another judicial tribunal on the ground that it had been procured through perjury and subornation of perjury, courts of equity would be engaged the greater part of their time in retrying questions of fact, on the suggestion that their trial in the original action had been affected by perjury. To prevent this result, the doctrine of intrinsic and extrinsic fraud has been resorted to by some courts, and, while conceding the fact that extrinsic fraud furnishes a foundation for equitable relief, the position is taken that false testimony amounts to intrinsic fraud, proof of which is not admissible."

Assuming all the allegations in appellants' petition to be true, such would only go to the trial of relitigating the issue fully and completely determined in the original suit on which the judgment was entered. We find nothing in this appeal to vacate the judgment assailed. The impeachment testimony of Amy Prestwood, claimed to have been newly discovered, is insufficient to set aside the judgment, and relitigate the suit.

The judgment of the trial court is affirmed.