

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00057-CV

IN THE MATTER OF THE MARRIAGE OF
JAMES A. MOBLEY AND SUE KILLGORE MOBLEY

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2009-773-DR

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# OPINION

The controversy in this appeal has its genesis in the divorce between James A. Mobley and Sue Kilgore Mobley, which was granted June 12, 2009, after the parties had submitted a mediated settlement agreement which purported to distinguish the separate property of each and which included a division of the community estate.

About two years after the entry of the divorce decree, Sue filed a lawsuit against Perry D. Reed individually and Perry D. Reed & Co. (the Reed defendants) alleging that they breached their fiduciary duty to her by betraying "the special relationship that existed between the parties." Sue also claims that during the discovery process, she uncovered evidence that James had fraudulently concealed material information during the earlier divorce proceedings, the concealment benefitting James and harming Sue during those proceedings. Upon coming to this conclusion, Sue proceeded to file a petition for bill of review, asking the court to revisit the divorce proceedings and, in essence, make new awards after setting aside the parties' final decree of divorce (the Bill of Review Suit).[1]

This appeal involves two inextricably related lawsuits, the origins of which began in April 2009, when James A. Mobley filed for divorce from Sue Killgore Mobley.[2] Within a year of James

---

[1]The subject of this appeal is the Bill of Review Suit. The suit against the Reed defendants (which shares a brief with this appeal) is the subject of a simultaneous appeal, which has been assigned this Court's docket number 06-15-00058-CV.

[2]*See In the Matter of the Marriage of James A. Mobley & Sue Killgore Mobley*, No. 2009-773-DR (307th Dist. Ct., Gregg County, Tex.). Sue has also appealed from the trial court's final judgments in favor of James in cause number 06-15-00058-CV. For purposes of this opinion, we will refer to this case as the Reed Suit. *See Sue Killgore Mobley v. Perry D. Reed, Perry D. Reed & Co., & James A. Mobley*, No. 2011-1426-B (124th Dist. Ct., Gregg County, Tex.). Sue has filed a consolidated brief in both causes. For clarity, we include in this opinion facts that are applicable to both appeals, but address only the issues Sue presented in the Bill of Review Suit. By opinion of this same date, in cause number 06-15-00058-CV, we address the issues Sue presented in the Reed Suit.

having filed for divorce, the parties negotiated and entered into a mediated settlement agreement dated June 7, 2010. Five days later, the trial court entered a final decree of divorce, which incorporated the settlement agreement. Pursuant to the settlement agreement, the parties arranged to divide their personal property, multiple residences and several vehicles, all of which were considered community property. The decree of divorce also fully described the separate property of both James and Sue.

In response to Sue's petition for bill of review, James filed a motion for partial summary judgment and also requested the award of attorney fees.[3] The trial court granted James' motion and his request for attorney fees.[4] Sue timely filed this appeal. Because we find no error, we affirm the trial court's partial summary judgment in favor of James and its award of attorney fees.

## I. The Trial Court's Entry of Partial Summary Judgment in Favor of James

### A. Standard of Review

"We review a trial court's summary judgment de novo." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When an appellate court reviews a traditional summary judgment granted in favor of the defendant, it determines whether he conclusively disproved at least one element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997), *superseded by statute on other grounds*. "A matter is conclusively established if ordinary minds cannot differ as to the

---

[3]James also filed a motion for partial summary judgment and a request for attorney fees as sanctions in the Reed Suit.

[4]On November 25, 2013, the trial court consolidated the Bill of Review Suit and the Reed Suit for purposes of the hearing on the attorney fees issue. The trial court took the matter under advisement and, on June 3, 2015, it issued a letter ruling granting James' requests for attorney fees in both cases.

3

conclusion to be drawn from the evidence." *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 418 (Tex. App.—Dallas 2012, no pet.). The moving party has the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

An appellate court must take evidence favorable to the non-movant as true and must indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). If a trial court's order granting summary judgment does not specify the basis for the ruling, an appellate court will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Bradley v. State ex. rel. White*, 990 S.W.2d 245, 247 (Tex. 1999).

### B. Analysis

Sue contends that during the discovery process in the Reed Suit, she realized that James had committed a fraudulent transaction during the divorce proceedings. Accordingly, Sue filed a bill of review arguing that she was detrimentally affected during the divorce proceedings because the profits from the alleged fraudulent transaction involved what she believed might have been community property. In her bill of review, Sue asked the trial court to set aside the parties' final decree of divorce.

"A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal." *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998). "Generally, bill of review relief is available only if a party has exercised due diligence in pursuing all adequate legal remedies against a former

4

judgment . . . ." *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999) (per curiam). Because the procedure conflicts with the fundamental policy that judgments must eventually become final, the grounds on which a bill of review can be obtained are narrow. *Transworld Fin. Servs. Corp. v. Briscoe*, 722 S.W.2d 407, 407 (Tex. 1987). Even though a bill of review is an equitable proceeding, simply showing that an injustice has occurred is not sufficient to justify relief. *Herrera*, 11 S.W.3d at 927.

A party seeking relief pursuant to a bill of review must plead and prove three elements: (1) a meritorious claim or defense (2) that he was prevented from asserting by the fraud, accident, or wrongful act of his opponent or by official mistake and (3) the absence of fault or negligence by the party seeking relief. *Caldwell*, 975 S.W.2d at 537. "In reviewing the grant or denial of a bill of review, every presumption is indulged in favor of the trial court's ruling, which will not be disturbed unless it is affirmatively shown that there was an abuse of judicial discretion." *Saint v. Bledsoe*, 416 S.W.3d 98, 101 (Tex. App.—Texarkana 2013, no pet.) (citing *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.), *overruled on other grounds by Glassman v. Goodfriend*, 347 S.W.3d 772 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)). The trial court abuses its discretion if it rules in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Id.* at 101–02.

Here, Sue claims that during the divorce proceeding, she received a memo that had been created by Steve Mobley, James' brother. The memo outlined a sale of a landfill lease owned by Giles Holdings. Sue contends that she was neither provided copies of the documents referenced in the memo nor provided the follow-up documentation regarding the sale. Sue claims that during

5

the Reed Suit, she discovered that the sale of the landfill lease did not proceed as it had been outlined in the memo. Instead, the sale appeared to have been made to a company called Chelford Properties, Inc. Sue maintains that Chelford Properties was run by Steve Mobley and that the company was formed for the sole purpose of purchasing the landfill lease from Giles Holdings. According to Sue, the sale generated a long-term capital gain to Giles Holdings in the amount of $11,024,956.00 and that James personally realized $2,039,617.00 from the capital gain. Sue states that she was not made aware of the capital gain and that she did not receive the Schedule K-1, Form 1120S evidencing the capital gain in the divorce. Sue claims that "[i]f the transaction was in reality a distribution made by Giles Holdings, LLC[,] accomplished by a sham sale to a presumed third party [Chelford Properties], then it may have well been community property."

In addition, Sue contends that as a result of capital gain realized by James, he was required to pay taxes in the amount of $200,000.00.[5] Sue maintains that James apprised her of the tax payment, but neither amended his discovery responses to inform Sue of the reason for the $200,000.00 tax liability nor produced the 2009 request for income tax extension. Sue believed that the payment was a typical quarterly personal tax payment of James' estimated taxes that he had made in the past. Sue contends that the tax payment was made out of community funds. Further, Sue maintains that the entire transaction benefited James and resulted in a detriment to her.

---

[5]On or about April 15, 2010, James made a payment for tax liability of $200,000.00 to the Internal Revenue Service (IRS) in conjunction with a request for an extension of time to pay his 2009 taxes.

Sue states that she presented evidence to the trial court demonstrating the existence of a material fact issue as to the claim of fraudulent concealment. In support of her position, Sue presented expert testimony, in the form of a sworn affidavit from James T. Davis,[6] that the sale of Giles Holdings' lease was a sham transaction. In his affidavit, Davis stated,

> The sale reportedly generated a long term capital gain to Giles Holdings, LLC in the amount of $11,024,956. Thus, as a beneficial shareholder the Defendant was personally allocated $2,039,617 in capital gain. The distribution of the leasehold interest in the landfill under this fraudulent third party sale scheme could constitute or create community property which should have been disclosed to Sue during the divorce proceeding.
>
>      . . . .
>
> In truth, it appears that the lease on the landfill was actually a distribution accomplished by a sham sale to a presumed unrelated third party to effect favorable tax treatment for the Giles members including the Defendant. In actuality, the Mobley's beneficial interest in the landfill income including the Defendant's, is the same both before and after the distribution. It is my observation that the involvement of Chelford in the transaction was to orchestrate and perpetuate the tax fraud on the distribution of the landfill leasehold for the specific income tax benefit to the Defendant and the Mobley Family and to the detriment of Sue and the community estate.

(Citations omitted).

In addition, Sue presented the deposition testimony of Mary Sikora, a third-party witness, in support of her theory that the transaction was a sham. Sue maintains that Steve Mobley paid Sikora to sign her name as the president of Chelford Properties, Inc., when, in fact, Steve Mobley was the head of the corporation.[7] Sue contends that "Steve Mobley simply needed someone

---

[6]Davis is a licensed, certified public accountant.

[7]Steve Mobley served as vice-president, secretary, and treasurer of the company.

outside the Mobley family to front ownership of the Chelford Properties, Inc. so no one would know the transaction between Giles Holdings, LLC and Chelford Properties, Inc. was a sham."

James contends that Giles Holdings was an entity owned by an entity that was his separate property and was known to Sue to be his separate property as shown by the fact that she signed the final divorce decree acknowledging that fact. James argues that Sue cannot now argue in a bill of review that Giles Holdings was not his separate property. We agree.

First, the final decree of divorce stated, under the heading "Confirmation of Separate Property," that the following property was James' separate property: (1) the James A. Mobley 2002 Exempt Trust and the business entity known as Giles Holdings, LLC; (2) James' traditional IRA; (3) the limited liability company known as James Mobley Management Company, LLC; (4) the limited partnership known as James Mobley Holdings, L.P.; (5) the limited partnership known as MJA, LLC, which included a Stifel Nicolaus Account; and (6) the following business entities: Mobley Group Holdings, LLC; Pilot Investments, LTD; and Ark-La-Tex Resources, Inc. Sue complains, however, that James fraudulently concealed relevant information regarding Giles Holdings and that had she had the information at issue, she would have, or at least could have, made more informed decisions during the divorce proceedings.

Fraud, as it relates to an attack on a final judgment, is either intrinsic or extrinsic. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003). Only extrinsic fraud will support the fraud element required for a party seeking relief via a bill of review. *Montgomery v. Kennedy*, 669

8

S.W.2d 309, 312 (Tex. 1984).[8]  This is because extrinsic fraud denies a party the opportunity to fully litigate at trial all of the rights or defenses that could have been asserted.  *Id*. at 313 ("Extrinsic fraud is conduct that prevents a real trial upon the issues involved.").

"Extrinsic fraud requires proof of some deception practiced by the adverse party, collateral to the issues in the case, which prevents the petitioner from fully presenting his claim or defense in the underlying action."  *Bakali v. Bakali*, 830 S.W.2d 251, 255 (Tex. App.—Dallas 1992, no writ) (citing *Jones v. Jones*, 641 S.W.2d 342, 345 (Tex. App.—Corpus Christi 1982, no writ)).  Appellate courts have found that fraud is extrinsic in rare cases when "fraud distorts the judicial process to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process is undermined" and the need to correct such a distortion outweighs the need for finality of judgment.  *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012) (quoting *Browning v. Prostok, Inc.*, 165 S.W.3d 336, 348 (Tex. 2005)).

In this case, James did not fail to disclose documents that were related to the parties' community property.  The trial court's final decree of divorce clearly stated that Giles Holdings was James' separate property as was James Mobley Management Company, LLC, and James Mobley Holdings, L.P.  Sue evidently agreed with the trial court's findings as acknowledged by her signatures on the settlement agreement and the final divorce decree.  More importantly, however, Sue admits that James provided her with a memo regarding the sale of the landfill lease

---

[8]In contrast to extrinsic fraud, intrinsic fraud "relates to the merits of the issues which were presented and presumably were or should have been settled in the former action."  *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989) (orig. proceeding).  Intrinsic fraud, which will not support a bill of review, is inherent in the matter considered and determined in the trial where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting fraud were, or could have been, litigated.  *Mills v. Baird*, 147 S.W.2d 312, 316 (Tex. Civ. App.—Austin 1941, writ ref'd).

owned by Giles Holdings; however, at the time she received the memo outlining the sale, she apparently chose not to proceed with additional investigation through the discovery process.

In addition, Sue concedes that James informed her of the $200,000.00 tax liability resulting from the sale of the landfill leasehold, but that she "believed" it was his typical quarterly personal tax payment. Again, the tax liability was James' since it was a consequence of the sale of the leasehold owned by his separate property.[9] In any case, the appropriate time for Sue to have questioned this payment was during the divorce proceedings, not after she agreed to the settlement which clearly stated Giles Holdings was James' separate property. Without making a finding as such, it is conceivable that Sue chose not to request supplemental discovery as to the sale because she was aware that Giles Holdings was James' separate property and, therefore, that she had no interest in the transaction. Therefore, whether it was a sham transaction would have had no impact on Sue.

Moreover, Sue claims she provided the trial court with evidence of a factual issue as to the alleged fraudulent scheme in the form of Davis' affidavit, an affidavit which is apparently couched in words to raise questions but to not make affirmative assertions or conclusions. Davis stated, "The distribution of the leasehold interest in the landfill under this fraudulent third party sale scheme *could* constitute or create community property which should have been disclosed to Sue during the divorce proceedings." (Emphasis added). Davis' statement is not a fact, it is an assumption, which is also prefaced on an assumption, that the transaction was a fraudulent one. In

---

[9]Sue claims that James paid the $200,000.00 tax liability out of community funds; however, she wholly fails to point to any evidence in support of her assertion.

10

his affidavit, Davis does not make an attempt to explain how the transaction or the proceeds from the transaction that involved James' separate property *could* constitute community property. Davis goes on to state, "In truth, it *appears* that the lease on the landfill was actually a distribution accomplished by a sham sale." (Emphasis added). As James points out, since Sue had no ownership interest in the property involved in the transaction it would be irrelevant to her whether it was truly a sham transaction.

Next, Davis provides a conclusory opinion that "the involvement of Chelford in the transaction was to orchestrate and perpetuate the tax fraud on the distribution of the landfill leasehold for the specific income tax benefit to the Defendant and the Mobley Family and to the detriment of Sue and the community estate." Again, Davis fails to explain how the sale of the landfill leasehold (which was part and parcel of a company that was solely owned by James as his separate property) would have had a detrimental outcome on Sue in relation to her rightful portion of the community estate.

Conclusory statements in an affidavit are insufficient either to support a motion for summary judgment or to raise a fact issue in response to a summary judgment motion. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984). "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Schindler v. Baumann*, 272 S.W.3d 793, 796 (Tex. App.—Dallas 2008, no pet.). The statements Davis made in his affidavit fall squarely within these perimeters and, therefore, are insufficient to create a material fact issue necessary to warrant granting Sue's petition for a bill of review.

In addition, Sikora's testimony does not assist Sue in her attempt to demonstrate the existence of a material issue of fact. Sue also offered Sikora's testimony to show that when Giles Holdings sold the lease to Chelford Properties, it was a sham transaction. Sikora testified as to her role in Chelford Properties (or to her lack thereof). Whether Sikora was actively involved in Chelford Properties or whether she was a figure-head used to effectuate a sham transaction in connection with Giles Holdings is irrelevant. In accord with the provisions contained in the final decree of divorce, the trial court made a finding that Giles Holdings was James' separate property. Sue has failed to show a material fact issue as to how a transaction involving James' separate property converted the property to community property nor has she shown how the transaction or the profit from the transaction affected her portion of the community property.

The trial court did not err when it granted James' partial summary judgment.

## II. The Trial Court's Award of Attorney Fees

The trial court awarded James attorney fees in the amount of $17,697.50. Sue argues that the trial court erred when it awarded attorney fees to James because James' counsel failed to properly segregate the fees incurred in the bill of review case and the fees incurred in the Reed Suit. We disagree.

### A. Standard of Review

The trial court has broad discretion in deciding whether to award attorney fees to either party and in determining the amount of attorney fees to be awarded in any case in which attorney fees are recoverable. *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 846 (Tex. App.—Texarkana 1996, writ denied); *Mills v. Mills*, 559 S.W.2d 687 (Tex. Civ. App.—Fort Worth 1977, no writ).

12

We will not overturn an attorney fee award absent a clear abuse of discretion. *Grynberg v. M–I L.L.C.*, 398 S.W.3d 864, 880 (Tex. App.—Corpus Christi 2012, pet. denied).

**B.      Analysis**

Here, the trial court entered judgment in the bill of review suit finding that "the '[b]ill of [r]eview' was in reality a suit to divide property." The trial court went on to state that attorney fees were proper pursuant to the Texas Family Code and awarded James $17,697.50 in attorney fees, along with interest until fully paid.

**1.      The Trial Court Had Discretion to Award Attorney Fees**

A party who successfully defends a bill of review is entitled to recover attorney fees in the bill of review proceeding if attorney fees are authorized in the prosecution of the underlying case. *Meece v. Moerbe*, 631 S.W.2d 729, 730 (Tex. 1982). More specifically, an award of attorney fees is available if they would have been available in an appeal of the underlying case. *State by and through Mattox v. Buentello*, 800 S.W.2d 320, 327 (Tex. App.—Corpus Christi 1990, no writ).

At the time of the parties' divorce proceedings, the trial court was within its discretion to authorize the award of attorney fees as part of the just and right division of the marital estate.[10] *See Mandell v. Mandell*, 310 S.W.3d 531, 541 (Tex. App.—Fort Worth 2010, pet. denied). Trial courts also have discretion to award reasonable attorney fees in an appeal of a divorce action. *Dickson v. McWilliams*, 543 S.W.2d 868, 871 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ).

---

[10]The current Family Code provides that a trial court may award reasonable attorney fees and expenses in a suit for dissolution of marriage. *See* TEX. FAM. CODE ANN. § 6.708(c) (West Supp. 2016). This provision was added in 2013 and was not applicable at the time James' petition for divorce was filed. Act of Apr. 3, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 916, §§ 3–4, 2013 Tex. Gen. Laws 2282, 2283 (current version at TEX. FAM. CODE § 6.708 (West Supp. 2016)).

Texas courts have held that attorney fees are recoverable for a party that successfully defends against a bill of review in a divorce proceeding because they would have been available to do so during an appeal of the underlying divorce. *Bakali*, 830 S.W.2d at 257 ("Because husband could have recovered attorney's fees if wife had appealed the divorce decree, the trial court did not err in awarding attorney's fees in this bill of review proceeding.").

### 2. Segregation of Attorney Fees

Although the trial court had the discretion to award James attorney fees, Sue maintains that the trial court erred because James failed to properly segregate the fees incurred in the Bill of Review Suit from those incurred in the Reed Suit. We must decide if the evidence sufficiently shows whether the billable hours in the Bill of Review Suit were properly segregated from those in the Reed Suit.[11]

This case is akin to cases wherein a trial court is tasked with the decision of whether an award of attorney fees is appropriate in a case that involves a variety of claims wherein attorney fees are recoverable as to some claims, but not to all of the claims in the case. Generally, a party is required to segregate fees that are recoverable from fees that are not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). In cases, such as this one, when a party argues that fees are not recoverable because the prevailing party did not segregate the fees, appellate courts have found that evidence of unsegregated fees is "some evidence of what the segregated amount

---

[11]Sue does not argue that the hourly billable rate was excessive or that the hours billed were excessive. Likewise, she does not contend that the fees were unnecessary. We note, however, that James' counsel testified as to the reasonableness and necessity of the attorney fees.

14

should be." *Id.* at 314.  In that set of circumstances, remand is appropriate to determine the segregated amount of fees due. *Id.*  In this case, remand is unnecessary.

The record reflects that the paralegal for James' attorney testified as to the attorney fees and as to which case the fees were incurred.  In addition, James' attorney offered into evidence, and the trial court admitted, a statement containing color-coded highlights that allowed the trial court to distinguish the billable hours in each case.  The work and fees incurred in the Reed Suit were highlighted in blue, the Bill of Review Suit was highlighted in green, work performed in both cases was highlighted in pink and then halved and allotted to each suit, and costs were highlighted in yellow.  The statement shows that the fees incurred in the Bill of Review Suit amounted to $17,697.50.[12]

Based on the evidence before us, we find that James presented the trial court with adequate evidence to show that the attorney fees incurred in the Bill of Review Suit were adequately segregated from those fees incurred in the Reed Suit.  We overrule Sue's point of error.

---

[12](1) R.L. Whitehead, Jr. – Attorney Fees:  $14,920.00; (2) Shannon Happney – Paralegal Fees:  $980.00; (3) Joint Billing Time for Attorney and Paralegal:  $585.00; and (4) work done on both cases, then halved in the amount of $1,212.50.

15

### III.     Conclusion

We affirm the trial court's judgment and its award of attorney fees in James' favor.


Bailey C. Moseley
Justice

Date Submitted:     April 29, 2016
Date Decided:       October 26, 2016