

# NUMBER 13-25-00219-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE PATRICIA SOTO GARCIA

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

By petition for writ of mandamus, relator Patricia Soto Garcia asserts that the trial court[1] abused its discretion by granting a bill of review in favor of real party in interest Samuel Porras Mancinas. Because Mancinas failed to meet his burden to plead and prove the required elements to obtain a bill of review, we conditionally grant the petition for writ of mandamus.

---

[1] This original proceeding arises from trial court cause number CL-24-0920-A in the County Court at Law No. 1 of Hidalgo County, Texas, and the respondent is the Honorable Rodolfo "Rudy" Gonzalez. *See* TEX. R. APP. P. 52.2.

## I. BACKGROUND

Garcia filed for divorce against Mancinas. At the final hearing in the case, both parties appeared pro se. After swearing in the parties, the trial court determined that the parties did not have minor children and asked the parties about dividing their marital assets. Garcia advised the trial court that she and Mancinas had reached a "final agreement" regarding the division of their property and alimony, and Mancinas was "relinquishing rights to everything and giving [her] alimony [of $]6,500" per month. The trial court questioned Mancinas regarding whether he agreed with Garcia's statements, and Mancinas confirmed that Garcia would "keep all of the properties and everything."

The trial court reviewed the parties' agreement, pursuant to which Garcia would receive the couple's two properties, including one home in Mercedes, Texas; and one vacant lot in Kermit, Texas; two trucks; a car; and two RV trailers. The parties further agreed that Mancinas would be responsible for all payments for these properties and items and would perform all required maintenance and repair work on them. The parties also agreed that Mancinas would pay for all their community debts, including loans and taxes. Mancinas advised the trial court that Garcia would allow him to "borrow" a property where he could reside, along with a truck and trailer for him to use for work. The trial court asked Mancinas if he was "basically giving up everything," and Mancinas confirmed that he was. The trial court asked Mancinas why he was doing so, and Mancinas answered: "I do not know, because I guess—I mean, I made a mistake and I just—I do not know. I mean, the way I should repay it and continue, you know . . . ."

2

The trial court then held a brief off-the-record conference with the parties. After the hearing resumed, the trial court questioned Mancinas regarding whether he was under medical care. Mancinas denied receiving any medical treatment. The trial court questioned him again on this topic later in the hearing, and Mancinas again denied that he was undergoing any medical care. In response to further questions, Mancinas also testified he was not taking any medications at the time of the hearing.

Mancinas testified that he was employed as a crane operator and that he earned approximately $2,500 to $3,000 each week. Garcia was not working at the time of the hearing, but she explained that she worked as Mancinas's assistant, so she "only go[es] to work whenever he finds [her] a position." According to further testimony, the parties also agreed that Garcia would continue to manage Mancinas's finances *after* the divorce. Mancinas testified that they reached this agreement because "[he] cannot really manage the money real good [sic]," "[he] forget[s] to pay stuff," and "[he] would rather buy [things] than pay the bills or whatever." Mancinas advised the trial court that he had asked Garcia if she wanted to stay with him while she handled his finances, and she agreed to do so. In this regard, Garcia acknowledged that she was staying with Mancinas at the Kermit property "with the hopes of getting a job with him." Mancinas informed the trial court that "my feelings or my heart is that maybe one day we can work it out again as a married couple, and so hopefully she is going to start working . . . soon because we usually work together all the time."

In contrast, Garcia testified that she wanted to get divorced. The trial court offered to defer the hearing and allow the parties to "try to work it out and come back in three or

four months," and Garcia reiterated that, "No, I want to get a divorce." Garcia explained that "[t]here was infidelity," that Mancinas had not been faithful to her, and that he had a long-term relationship with another woman. Garcia also indicated that Mancinas had committed family violence against her on two different occasions.

In terms of spousal maintenance, or alimony, Garcia advised the trial court that Mancinas had agreed to pay her $6,500 monthly. Mancinas confirmed that he had agreed to pay Garcia "for life." However, despite the parties' agreement, the trial court instead ordered Mancinas to pay Garcia $2,000 per month for a three-year period. The trial court signed the final decree of divorce on September 27, 2023.

On February 23, 2024, Mancinas, now represented by counsel, filed an "Original Petition for Bill of Review and Motion to Abate All Hearings." The petition recounts the history of the parties' divorce and provides, in relevant part, that:

4.      [Mancinas] had no legal representation at the time of the hearing. The division of the marital [property] was not just and fair. The movant was not able to appreciate the legal ramifications of what he signed[.] All assets and property were awarded to [Garcia]. Also, a claim for alimony was plead[ed] by [Garcia]. The State of Texas does legally recognize alimony.[2]

5.      [Mancinas] has no adequate legal remedy now available to avoid the effect of the order. Despite the exercise of due diligence, [Garcia] fraudulently informed [Mancinas] of a possible reconciliation, convincing him to sign the Decree.

---

[2] We assume that this statement was made in error and Mancinas intended to state that Texas does *not* recognize alimony. We note that, since 1995, Texas has recognized both court-ordered spousal maintenance awards and court-approved voluntary obligations regarding payments made to former spouses. *See, e.g.*, *Dalton v. Dalton*, 551 S.W.3d 126, 131 (Tex. 2018).

Mancinas thus requested the trial court to set aside the divorce decree and order a new division of the community estate. He further requested a new trial, and that "all hearings related to this matter be abated until further notice."

Garcia, also now represented by counsel, filed a response to Mancinas's petition for bill of review alleging, among other things, that Mancinas lacked a meritorious defense, he failed to pursue his legal remedies, and the divorce was the result of his "own fault or negligence." In terms of Mancinas's request to abate the proceedings, Garcia explained that she had recently filed a motion for enforcement against Mancinas because he failed to pay certain debts that he was required to pay pursuant to the divorce decree.

On December 18, 2024, the trial court held a non-evidentiary hearing on Mancinas's petition for bill of review and motion to abate. At the hearing, Mancinas's counsel argued that Garcia had represented to Mancinas that the parties would reconcile after he signed the divorce decree. Counsel acknowledged that any such representation did not explicitly appear in the record of the final hearing, but that such representation could be inferred from the parties' testimony.

On January 28, 2025, the trial court signed a first amended order granting Mancinas's bill of review. On March 11, 2025, the trial court signed findings of fact and conclusions of law in support of its ruling. In relevant part, the trial court concluded that: "Mancinas was not able to appreciate the legal ramifications of what he signed away"; "Texas does not recognize alimony"; Mancinas agreed to the divorce "because [Garcia] told him there was a possibility of reconciliation"; Mancinas "believed he would be able to reconcile with [Garcia] based on her representations, and thus, he did not file a motion

5

for reconsideration or new trial"; and Mancinas did not determine that Garcia's "representations were false" until more than thirty days after the divorce decree was signed. The trial court thus concluded that: Mancinas presented prima facie proof of a meritorious defense; Mancinas was prevented from fully litigating his rights in the divorce proceeding due to extrinsic fraud committed by Garcia, which consisted of "deliberately telling [Mancinas] there was a possibility of reconciliation . . . when there was not," thereby convincing him to sign the divorce decree; and Mancinas's agreement to the decree "was made under circumstances that impaired his ability to make clear decisions, constituting a wrongful act by [Garcia]," unmixed with fault or negligence of his own, because "his mental condition, combined with [Garcia's] actions, prevented [him] from fully participating" in the divorce.

This original proceeding ensued. In four issues, Garcia asserts that the trial court abused its discretion by granting the bill of review because: (1) Mancinas failed to plead or prove extrinsic fraud, accident, wrongful conduct, or official mistake; (2) Mancinas failed to exhaust available legal remedies, including a motion for new trial or notice of appeal; (3) Mancinas lacked a meritorious defense because he did not file a counter-petition in the divorce proceeding and presented no sworn pleadings or admissible evidence to support such a defense; and (4) a "subjective misunderstanding of legal consequences[,] in the absence of competent evidence of fraud or wrongful conduct, "will not support a bill of review.

We requested and received a response to the petition for writ of mandamus from Mancinas, who asserts in relevant part that: (1) he pleaded and proved extrinsic fraud on

6

Garcia's part which caused his failure to exhaust his legal remedies or present a meritorious defense; and (2) the trial court did not abuse its discretion by granting equitable relief "based on Mancinas's misunderstanding of legal consequences and Garcia's fraud." Mancinas further argues that mandamus relief should be denied because Garcia failed to comply with the procedural rules for filing a petition for writ of mandamus.

## II. MANDAMUS

Mandamus is an "extraordinary remedy." *In re Rogers*, 690 S.W.3d 296, 302 (Tex. 2024) (orig. proceeding) (per curiam) (quoting *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding)). Mandamus is discretionary in nature, and it is governed by equitable principles. *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 663 (Tex. 2023) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). To obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and the relator lacks an adequate remedy by appeal. *In re Dall. HERO*, 698 S.W.3d 242, 247 (Tex. 2024) (orig. proceeding); *In re AutoZoners, LLC*, 694 S.W.3d 219, 223 (Tex. 2024) (orig. proceeding) (per curiam).

"A bill of review which sets aside a prior judgment but does not dispose of all the issues of the case on the merits is interlocutory in nature and not a final judgment appealable to the court of appeals or the supreme court." *Kiefer v. Touris*, 197 S.W.3d 300, 302 (Tex. 2006) (per curiam) (quoting *Tesoro Petroleum v. Smith*, 796 S.W.2d 705, 705 (Tex. 1990) (per curiam)); *see In re D.N.C.*, 656 S.W.3d 764, 766 (Tex. App.—El Paso 2022, no pet.). Here, the trial court's order granted Mancinas's bill of review, but did not dispose of the case on the merits. *See Kiefer*, 197 S.W.3d at 302. Thus, Garcia lacks

7

the ability to appeal the trial court's order until a final judgment in the case has been rendered.

We determine the adequacy of an appellate remedy by balancing or weighing the benefits of mandamus review against the detriments. *In re State Farm Mut. Auto. Ins.*, 712 S.W.3d 53, 59 (Tex. 2025) (orig. proceeding); *In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding). "No specific definition captures the essence of or circumscribes what comprises an 'adequate' remedy; the term is 'a proxy for the careful balance of jurisprudential considerations,' and its meaning 'depends heavily on the circumstances presented.'" *In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding) (cleaned up); *see In re Garza*, 544 S.W.3d at 840; *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136–37 (Tex. 2004) (orig. proceeding). Thus, depending on the circumstances, mandamus may be available to review an order granting a bill of review. *21st Century Centennial Ins. v. Ramirez*, 675 S.W.3d 356, 362–63 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.) (combined app. & orig. proceeding [mand. denied]); *In re Estrada*, 492 S.W.3d 42, 49 (Tex. App.—Corpus Christi–Edinburg 2016, orig. proceeding); *see also In re Miramontes*, 648 S.W.3d 590, 599–600 (Tex. App.—El Paso 2022, orig. proceeding) (noting a split among the intermediate appellate courts regarding whether mandamus relief is available to address an interlocutory order granting a bill of review).

### III.    BILL OF REVIEW

"A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal."

8

*WWLC Inv. v. Miraki*, 624 S.W.3d 796, 799 (Tex. 2021) (per curiam) (quoting *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam)). The bill of review procedure is founded in equitable principles, but courts do not readily grant bills of review "[b]ecause it is fundamentally important in the administration of justice that some finality be accorded to judgments." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 226 (Tex. 2015) (quoting *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (1950)). Thus, we narrowly construe the grounds on which a plaintiff may obtain a bill of review. *Mabon Ltd. v. Afri-Carib Enters.*, 369 S.W.3d 809, 812 (Tex. 2012) (per curiam). However, even though a bill of review is equitable in nature, the mere fact that an injustice may have occurred is not sufficient to justify relief. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999) (per curiam); *In re Office of Atty. Gen.*, 276 S.W.3d 611, 618 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding [mand. denied]); *Temple v. Archambo*, 161 S.W.3d 217, 224 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.).

A bill of review plaintiff must ordinarily plead and prove: (1) a meritorious defense to the underlying cause of action; (2) which the plaintiff was prevented from making by the fraud, accident, or wrongful act of the opposing party, or official mistake; (3) unmixed with any fault or negligence on his or her own part. *WWLC Inv.*, 624 S.W.3d at 799; *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam). The plaintiff bears the burden of proof to establish these elements. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003); *21st Century Centennial Ins.*, 675 S.W.3d at 363. In this regard, though fraud may be either extrinsic or intrinsic, only extrinsic fraud will support a bill of review. *King Ranch, Inc.*, 118 S.W.3d at 752. "Extrinsic fraud is fraud

9

that denied a party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted." *Id.*; *see In re D.N.C.*, 656 S.W.3d at 766; *In re Marriage of Mobley*, 503 S.W.3d 636, 643 (Tex. App.—Texarkana 2016, pet. denied).

## IV. ANALYSIS

Garcia argues that "[t]he trial court abused its discretion by granting a bill of review that was legally and factually insufficient on its face." Mancinas argues that mandamus relief should not issue for procedural reasons and because Garcia's claims fail on their merits.

### A. Procedural Deficiencies

We first address Mancinas's claims that we should deny relief because Garcia's petition for writ of mandamus is deficient. First, Mancinas asserts that Garcia's statement of the case fails to comply with Texas Rule of Appellate Procedure 52.3(d) because it is two pages long, discusses the facts, and includes argument. In this regard, Rule 52.3(d) states that a petition for writ of mandamus "must contain a statement of the case that should seldom exceed one page and should not discuss the facts," and it should be "concise." TEX. R. APP. P. 52.3(d). We agree that Garcia's statement of the case fails to comply with Rule 52.3(d) because it is not concise, and more specifically, because it includes facts and argument pertaining to the merits. *See id.*

Second, Mancinas further asserts that we should deny mandamus relief because Garcia failed to properly authenticate the exhibits in her appendix and record. Under the appellate rules, the relator's appendix and record must contain certified or sworn copies of the documents that are required to be filed. *Id.* R. 52.3(k)(1)(b), 52.7(a)(1). Similarly,

10

transcripts of relevant testimony must be "properly authenticated." *Id.* R. 52.7(a) (2). Most of the documents included in Garcia's appendix and record—including, *inter alia*, the petition for divorce, the divorce decree, the petition for bill of review, Garcia's response, the first amended order granting the bill of review, and the findings of fact and conclusions of law—are certified as required by the rules. However, the record also contains copies of the official reporter's records of the two hearings at issue in this original proceeding, and those records are not authenticated.

We conclude that these deficiencies do not preclude our review of the merits of Garcia's petition for writ of mandamus. In our discretion, we will proceed by disregarding the facts and argument inappropriately contained in Garcia's statement of the case. And because Mancinas does not argue that the reporter's records are inaccurate or misleading, we will include them in our review. *See id.* R. 2; *see also In re Bigham*, No. 10-13-00355-CV, 2014 WL 285667, at \*1 (Tex. App.—Waco Jan. 23, 2014, orig. proceeding) (mem. op.).

## B. Merits

Garcia alleges in her first issue that Mancinas failed to plead and prove the elements required to obtain a bill of review. Thus, we examine whether Mancinas pleaded and proved that he possessed (1) a meritorious defense to the divorce; (2) which he was prevented from making by the fraud, accident, or wrongful act of Garcia; (3) unmixed with any fault or negligence on his own part. *WWLC Inv., L.P.*, 624 S.W.3d at 799; *Katy Venture, Ltd.*, 469 S.W.3d at 163.[3]

---

[3] We note that the trial court in this case held a single hearing on the bill of review rather than following the *Baker* two-step procedure, which contemplates a preliminary hearing regarding whether the

11

Mancinas's petition for bill of review alleged that he lacked legal representation at the divorce hearing; the division of the marital property was not just and fair; he "was not able to appreciate the legal ramifications of what he signed" as all assets and properties were awarded to Garcia; Garcia received alimony and "[t]he State of Texas does [not] legally recognize alimony"; he lacks an "adequate legal remedy now available to avoid the effect" of the divorce decree; and "[d]espite the exercise of due diligence," Garcia "fraudulently informed [him] of a possible reconciliation, convincing him to sign the [divorce d]ecree."[4]

In this original proceeding, Mancinas cites two cases that he alleges support his contention that fraudulent promises of reconciliation in the context of a divorce can support a bill of review. *See Bobbitt v. Bass*, 713 S.W.2d 217, 218–19 (Tex. App.—El Paso 1986, writ dism'd w.o.j.) (affirming an order granting a bill of review in which husband testified that wife told him that she had filed for divorce in a "fit of haste, not to worry about it"; the parties continued to see each other and travel together; and a witness testified that he heard wife tell husband to disregard the divorce proceedings and that they would

---

bill of review petitioner made a prima facie showing of a meritorious defense or ground of appeal, followed by a second hearing regarding the other remaining bill of review issues. *See Baker v. Goldsmith*, 582 S.W.2d 404, 408–09 (Tex. 1979); *Maree v. Zuniga*, 502 S.W.3d 359, 362 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Morris v. O'Neal*, 464 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Ramsey v. State*, 249 S.W.3d 568, 576 (Tex. App.—Waco 2008, no pet.). Handling a petition for bill of review in a single proceeding, as in this case, "often occurs." *Thompson v. Ballard*, 149 S.W.3d 161, 165 (Tex. App.—Tyler 2004, no pet.).

[4] A petition for a bill of review "must allege factually and with particularity that the prior judgment was rendered as the result of fraud, accident or wrongful act of the opposite party or official mistake unmixed with his own negligence." *Baker*, 582 S.W.2d at 408; s*ee State v. 1985 Chevrolet Pickup Truck*, 778 S.W.2d 463, 464 (Tex. 1989); *Mosley v. Dallas Cnty. Child Protective Servs.*, 110 S.W.3d 658, 661 (Tex. App.—Dallas 2003, pet. denied). Bare conclusory statements do not meet this requirement. *See Baker*, 582 S.W.2d at 408–09; *In re Office of Attorney Gen. of Tex.*, 193 S.W.3d 690, 694 (Tex. App.—Beaumont 2006, orig. proceeding).

"straighten all of this out later"); *McFarland v. Reynolds*, 513 S.W.2d 620, 623–28 (Tex. App.—Corpus Christi 1974, no writ) (concluding that wife's verified petition for bill of review adequately pleaded fraud where wife alleged that husband told her that they could reconcile and remarry if she agreed to a divorce and gave husband custody of their minor children and their community property).

The foregoing cases are instructive regarding the pleading and proof requirements regarding fraudulent misrepresentations in bills of review concerning divorce proceedings. However, on this record, we agree with Garcia that Mancinas has failed to meet his burden of proving his right to a bill of review. In a bill of review proceeding, the petitioner "must open and assume the burden of proving that the judgment was rendered as the result of the fraud, accident or wrongful act of the opposite party or official mistake unmixed with any negligence of his own." *Baker v. Goldsmith*, 582 S.W.2d 404, 409 (Tex. 1979); *see In re Office of Att'y Gen.*, 276 S.W.3d at 618; *see also Moccia v. Benn*, No. 01-23-00089-CV, 2024 WL 3608198, at *5 (Tex. App.—Houston [1st Dist.] Aug. 1, 2024, no pet.) (mem. op.). Mancinas failed to meet his threshold burden by failing to verify his petition for bill of review. *See Baker*, 582 S.W.2d at 408; *Bevering v. Bevering ex rel. Bevering*, 401 S.W.3d 293, 297 (Tex. App.—San Antonio 2013, pet. denied); *see also Thomas v. 462 Thomas Fam. Props., LP*, 559 S.W.3d 634, 641 n.3 (Tex. App.—Dallas 2018, pet. denied). More saliently, however, Mancinas offered no evidence in support of any of his contentions. At the hearing on the bill of review, the trial court and the parties discussed the terms of the original divorce decree and the testimony adduced at the

13

hearing on that decree,[5] but no evidence was adduced regarding the issues raised in Mancinas's petition for bill of review.

Mancinas argues that the facts to support his request for a bill of review are found in the transcript from the divorce hearing—that is, testimony that Garcia was living with him at the time of the hearing "while she manages the money," and Mancinas's testimony that "maybe one day [they] can work it out again as a married couple." According to Mancinas, this testimony is sufficient to show that Garcia promised to reconcile with Mancinas if he signed the divorce decree. However, the reporter's record from the divorce hearing fails to reveal that Garcia made any representations regarding a wish or plan to reconcile after the divorce. To the contrary, Garcia testified unequivocally that she wanted a divorce and rejected any possibility of reconciliation when the trial court offered to defer the hearing to allow the parties an opportunity for rapprochement. The record from the divorce hearing fails to contain any testimony or evidence that Garcia had fraudulently promised Mancinas reconciliation in exchange for the divorce.

The record thus reflects that Mancinas failed to prove that he possessed a meritorious defense which he was prevented from making by Garcia's alleged fraud or wrongful act unmixed with any fault or negligence of his own. *See King Ranch, Inc.*, 118 S.W.3d at 752; *Bobbitt*, 713 S.W.2d at 218–19; *see also In re Beamon*, No. 05-25-00266-CV, 2025 WL 1570532, at *2–3 (Tex. App.—Dallas June 3, 2025, orig. proceeding) (mem. op.) (conditionally granting mandamus relief to set aside an order granting a bill of review

---

[5] In a bill of review proceeding, the trial court may take judicial notice of the record in the original suit. *See* 48 TEX. JUR. 3d *Judgments* § 269 (2025) (citing, *inter alia*, *Strickland v. Ward*, 185 S.W.2d 736, 736 (Tex. App.—Dallas 1945, no writ)).

14

in a divorce case where the record failed to contain representations constituting fraudulent promises for reconciliation).

## C.     Summary

We conclude that the trial court erred by granting Mancinas's bill of review because he failed to plead and prove the necessary elements to obtain an equitable bill of review. Accordingly, we sustain Garcia's first issue. Having done so, we need not address her remaining issues. *See* TEX. R. APP. P. 47.1, 47.4.

## V.     CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, Mancinas's response, the record, and the applicable law, is of the opinion that Garcia has met her burden to obtain mandamus relief as discussed herein. Accordingly, we conditionally grant the petition for writ of mandamus. We direct the trial court to: (1) vacate its order granting the bill of review; and (2) deny the petition for bill of review. Our writ will issue only if the trial court fails to act in accordance with this memorandum opinion.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
30th day of June, 2025.

15